Gage, P.J.
 

 Plaintiff appeals as of right the trial court’s order granting defendants summary disposition with respect to plaintiff’s medical malpractice claim. The trial court granted defendants summary disposition pursuant to MCR 2.116(C)(7) on the basis that plaintiff filed her claim beyond the time allowed by the applicable statute of limitations. We affirm.
 

 Defendant Lewis Clayman, a dentist and medical doctor, was engaged in the practice of oral and maxillofacial surgery at defendant Sinai Hospital. In 1989, defendant Clayman (hereinafter defendant) began treating plaintiff, who had sores or lesions on her tongue. In June of 1989, defendant resectioned plaintiff’s tongue, partially removing a cancerous growth. Spots recurred on plaintiff’s tongue, however, several times over the next few years. Defendant opined that the spots represented recurring dysplasia, not cancer, and opted to perform laser treatments to remove the spots. Although plaintiff underwent laser surgeries in 1990, 1992, and 1993, these procedures did not successfully prevent the spots from reappearing.
 

 On various occasions during this 1989-93 period, defendant apparently referred plaintiff to dentists and oral surgeons. Eventually, on December 2, 1993, plaintiff received a tentative diagnosis from doctors on Henry Ford Hospital’s Head and Neck Tumor Board
 
 *200
 
 that the spot on her tongue might represent spreading cancer. On December 3, 1993, plaintiff visited defendant’s office for the last time. At this visit, plaintiff informed defendant of the. tentative cancer diagnosis she had received, and also discussed with defendant photodynamic therapy, an experimental treatment of which the Henry Ford Hospital doctors had made her aware. Defendant remained of the opinion that plaintiff did not have cancer, but only a precancerous growth. While plaintiff did not visit defendant’s office again, she and defendant had several telephone conversations from January until March 1994, during which they discussed the merits of photodynamic therapy and the existence of other alternative treatments.
 

 After a biopsy in early March 1994, plaintiff learned that she did indeed have cancer. Plaintiff then consented to photodynamic therapy at Henry Ford Hospital, which therapy began in April 1994. Because the photodynamic therapy did not completely rid plaintiff’s mouth of cancerous cells, plaintiff subsequently underwent radiation therapy at a University of Michigan hospital. Since plaintiff and defendant’s early 1994 telephone conversations, plaintiff apparently has not spoken again with defendant.
 

 On December 21, 1995, plaintiff filed the instant malpractice action. The trial court granted defendant summary disposition pursuant to MCR 2.116(C)(7) on the basis that plaintiff had-filed her complaint beyond the two-year period of limitation applicable to. medical malpractice actions.
 

 Plaintiff now challenges the trial court’s grant of summary disposition. We review de novo a trial court’s grant of summary disposition under; , MCR
 
 *201
 
 2.116(C)(7).
 
 Novak v Nationwide Mut Ins Co,
 
 235 Mich App 675, 681; 599 NW2d 546 (1999). We consider all documentary evidence submitted by the parties and accept as true the plaintiffs well-pleaded allegations, except those contradicted by documentary evidence. We view the uncontradicted allegations in the plaintiffs favor and ascertain whether the claim is time-barred as a matter of law.
 
 Id.
 
 Whether a cause of action is barred by the statute of limitations is a question of law that we also review de novo.
 
 Ins Comm’r v Aageson Thibo Agency,
 
 226 Mich App 336, 340-341; 573 NW2d 637 (1997).
 

 Plaintiff contends that because she continued receiving treatment from defendant by telephone through March 3, 1994, this date constitutes the accrual date of her malpractice claim, and that the trial court therefore erred in relying on the date of plaintiffs last visit to defendant’s office as the appropriate accrual date. To determine the validity of plaintiff’s argument, we must examine the statute of limitations in effect when plaintiff’s cause of action arose.
 
 Chase v Sabin,
 
 445 Mich 190, 192, n 2; 516 NW2d 60 (1994). Generally, a plaintiff must commence his medical malpractice action within two years of the claim’s accrual. MCL 600.5805(1), (4); MSA 27A.5805(1), (4).
 
 [1]
 
 The statutory definition of “accrue” in effect at the time plaintiff’s claim arose explained that
 

 
 *202
 
 a claim based on the medical malpractice of a person who is, or who holds himself or herself out to be, a licensed health care professional . . . accrues at the time of the act or omission which is the basis for the’claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. [MCL 600.5838a(l); MSA 27A.5838(1)(1).]
 

 Because the accrual date depends on the basis of plaintiff’s malpractice allegations, we must examine plaintiff’s complaint.
 

 The essence of the malpractice allegations in plaintiff’s complaint is that defendant failed to properly evaluate her condition by not diagnosing her cancer, and failed to properly treat her by neglecting to conduct appropriate examinations and neglecting to refer her to other, more appropriate and competent healthcare providers. Plaintiff offers no specific date on which defendant’s failures allegedly occurred, but instead maintains that these failures represented ongoing deficiencies that continued until the termination date of the parties’ physician-patient relationship, March 3, 1994. As support for her argument that her claim did not accrue until March 3, 1994, plaintiff cites several Michigan cases indicating that doctor-patient telephone calls can extend the professional relationship. Plaintiff’s reliance on these cases, however, is misplaced. The cited casés interpret an obsolete statutory definition of accrual for purposes of medical malpractice actions arising after 1986.
 
 Morgan v Taylor,
 
 434 Mich 180, 192, n 17; 451 NW2d 852 (1990). Before 1986, MCL' 600.5838(1); MSA 27A.5838(1) provided that malpractice claims accrued “at the time th[e state licensed professional] discontinues treating or otherwise serving the plaintiff in a
 
 *203
 
 professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose.”
 
 Stapleton v City of Wyandotte,
 
 177 Mich App 339, 343; 441 NW2d 90 (1989). Because plaintiffs claim definitely accrued after 1986 when the Legislature abrogated the “last treatment rule” with respect to medical malpractice claims, a determination of the termination date of the parties’ physician-patient relationship is irrelevant to a proper disposition of the instant case.
 
 [2]
 

 Plaintiff’s position that her claim did not accrue until the end of the parties’ professional relationship ignores the statutory language defining accrual as “the time of
 
 the act or omission which is the basis for the claim.”
 
 MCL 600.583.8a(l); , MSA 27A.5838(1)(1) (emphasis added).
 
 [3]
 
 This unambiguous language reflects the Legislature’s desire to focus the accrual date of medical malpractice claims on the occasion of the act or omission complained of, and the Legislature’s clear rejection of the notion that the existence of a continuing physician-patient relationship by itself could extend the accrual date beyond the specific, allegedly negligent act or omission charged.
 
 Eaton Farm Bureau v Eaton Twp,
 
 221 Mich
 
 *204
 
 App 663, 668; 561 NW2d 884 (1997) (A change in statutory language is presumed to reflect a change in the meaning of the statute.). Plaintiff clearly based her malpractice claim on defendant’s failure to diagnose her cancer and defendant’s allegedly improper election of a course of treatment. Presumably defendant’s diagnosis and treatment decisions initially occurred at some point before his first laser treatment removal in 1990 of the spot that had appeared on plaintiff’s tongue. We may assume for purposes of our analysis that defendant’s subsequent 1992 and 1993 misdiagnoses and decisions to continue utilizing laser treatment after the spot’s recurrences constituted separate acts or omissions that would represent new accrual dates.
 
 [4]
 
 .. Even assuming further that defendant’s December 3, 1993, restatement of his belief that plain
 
 *205
 
 tiff did not have cancer qualified as a separate, distinct diagnosis of plaintiff’s condition in light of the contrary information she had received from Henry Ford Hospital doctors, plaintiff nowhere alleged any subsequent new act or omission beyond December 3, 1993, that would extend her claim’s accrual date.
 

 With respect to her early 1994 telephone conversations with defendant, plaintiff offered the following testimony:
 

 Q:
 
 And your telephone calls with [defendant] after [December 3, 1993] were basically to report to him what was going on with your treatment elsewhere?
 

 A:
 
 I had no treatment elsewhere at that time.
 
 My phone calls to him were I guess hoping that maybe he would have some other alternatives for me. The photodynamic therapy didn’t exactly sound like a beautiful road to go down, but I found no other.
 

 
 *206
 

 Q:
 
 Well, you had biopsies done at Henry Ford?
 

 A:
 
 I waited three months to do them.
 
 I was waiting desperately for Dr Clayman to give me more advice on what he thought wasn’t cancer.
 

 Q:
 
 So were they [Henry Ford doctors] recommending that you try the photodynamic therapy first?
 

 A:
 
 They explained to me that it was normally used for—I can’t even remember the different parts of the body, that they normally went through I guess the throat or something, the esophagus or something, that they hadn’t used it on the mouth before.
 
 And I called Dr. Clayman several times because he had told me that he had also heard of this and his hospital had applied for this photodynamic therapy, so I knew he had some knowledge of it and he must have believed in it somehow or he wouldn’t have applied for it, and I was hoping that he might give me some kind of advice. I understood he couldn’t treat me with it because he didn’t have it in his hospital, but I was hoping that he would give me advice whether or not he thought there would be hope using it.
 

 Q:
 
 And that’s why you were upset with Dr. Clayman, for not telling you that you had cancer?
 

 A:
 
 No. I can’t even say that. I was upset because I didn’t know who was telling me the right thing. Who do you believe? I mean I believed Dr. Clayman. I had faith in him. I saw him for four years. I trusted him, and now for me to have all these doctors telling me I had cancer and he still pushed me in that chair and told me you do not have cancer.
 

 Q:
 
 So that’s when you lost faith in him?
 

 A:
 
 No, because I still had no faith in what they were telling me. All I wanted—and
 
 I called several times in, you know, January and February trying to get Dr. Clayman to tell me, you know, what he could say as opposed to what they’re trying to do for me. I wanted no part of this eocperiment. Fm not a guinea pig, but no one was offering me
 
 
 *207
 

 anything substantial. All he could tell me is we’ll go back in and do another biopsy and see what he thinks, and another C02 laser and a few months down the road be right back where I came from.
 

 Had he come up with a different route of surgery, different plan of action, then I’d say, I’ll still be with him.
 

 [Plaintiff’s affidavit, ¶ 8] From my December 3, 1993, visit with Dr. Clayman, until March of 1994,1 had several phone consultations with Dr. Clayman, discussing with him the pros and cons of photodynamic therapy, as well as alternative forms of treatment.
 

 [Plaintiff’s affidavit ¶ 9] Dr. Clayman continued to advise me of my condition (i.e. no cancer), and possible courses of future treatment.
 

 [Plaintiff’s affidavit, ¶ 11] On March 3, 1994, I received my biopsy results confirming spreading cancer, and
 
 because Dr. Clayman did not provide any alternative treatment, other than C02 laser,
 
 I consented with Henry Ford Hospital to participate in photodynamic therapy. [Emphasis added.]
 

 This testimony does not allege any new, distinct negligent acts or omissions by defendant in the early months of 1994, but indicates that defendant merely adhered to his original misdiagnosis and treatment determination. Because defendant’s misdiagnosis or misdiagnoses and allegedly negligent treatment decisions occurred at some point no later than December 3, 1993, over two years before plaintiff’s filing of her malpractice claim on December 21, 1995, the trial court properly granted defendant summary disposition pursuant to MCR 2.116(C)(7). MCL 600.5805(4); MSA 27A.5805(4).
 

 
 *208
 
 To the extent that plaintiff suggests a continuing-wrong or continuing-treatment rule should apply to defendant’s adherence to his original diagnosis and treatment decision and extend the accrual date of plaintiff’s claim to March 3, 1994, plaintiff has cited no authority for this proposition.
 
 [5]
 
 Moreover, we decline to adopt such an approach on our own initiative when our interpretation of subsection 38a(l) in this manner would operate in this case to reinstate the last treatment rule abrogated by the Legislature over a decade ago.
 
 [6]
 

 The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which the courts may not interfere .... It is the function of the court to fairly interpret a statute as it then exists; it is not the function of the court to legislate.
 
 [Morgan, supra
 
 at 192 (citations omitted).]
 

 The Legislature has removed the last treatment rule from the statutory scheme governing the limitation period for medical malpractice claims, and we will not effectively resurrect the doctrine as an “exception” to the definition of “accrual date” in MCL 600.5838a(l); MSA 27A.5838(1)(1). The instant record reveals that the alleged acts or omissions supporting
 
 *209
 
 plaintiff’s malpractice claim against defendant occurred no later than December 3, 1993. Therefore, pursuant to MCL 600.5838a(l); MSA 27A.5838(1)(1), plaintiff’s claim had accrued by this date, and the trial court correctly granted defendant summary disposition on the basis of plaintiff’s failure to file her claim within two years of defendant’s alleged acts or omissions.
 

 Affirmed.
 

 [1]
 

 MCL 600.5838a(2); MSA 27A.5838(1)(2) provides that a medical malpractice action “may be commenced within the applicable period prescribed in section 5805 [two years of accrual]... or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.” In the instant case, the discovery date is not at issue because plaintiff concedes that she filed her claim beyond the six-month period after which she discovered her cancerous condition.
 

 [2]
 

 Accordingly, the mere fact that plaintiff on March 24, 1994,.received a postcard from defendant’s office urging her to schedule her next appointment is likewise irrelevant to our determination of the accrual date of plaintiffs claim.
 

 [3]
 

 When a statute is clear and unambiguous, judicial construction or interpretation is unnecessary and therefore precluded.
 
 Lorencz v Ford Motor Co,
 
 439 Mich 370, 376; 483 NW2d 844 (1992). The fair and natural import of the terms employed, in view of the subject matter of the law, should govern.
 
 In re Wirsing,
 
 456 Mich 467, 474; 573 NW2d 51 (1998). When the statutory language is clear, the Legislature is presumed to have intended the meaning it has plainly expressed, and the statute must be enforced as written.
 
 Nation v W D E Electric Co,
 
 454 Mich 489, 494; 563 NW2d 233 (1997).
 

 [4]
 

 While we may make this assumption for purposes of our analysis, we note that the record does not necessarily support our conclusion that defendant’s 1990, 1992, and 1993 laser treatments for spot removal represented new, distinct, and separate acts or omissions. Relevant statements by plaintiff tending to indicate that defendant continuously adhered to the same diagnosis and treatment determinations include the following:
 

 At that time [December 3,1993] I was in a great deal of pain. The advice I got from the other doctors told me I had cancer. He still looked at me, told me I didn’t have cancer .... It was only three months from the last surgery he did on me and the only thing he offered me was the same surgery over again, which he had repeated already three times plus the resection of the tongue and it kept recurring. I was hoping he’d have a new route to go down, something different to offer me.
 

 [Defendant] did biopsies in the ‘90 surgery, ‘92 surgery, ‘93 surgery and he always come [sic] back and told me the same thing, it’s not cancer. Don’t worry. It’s just severe dysplasia and we need to go in and do C02 laser and bum the surface and keep it from becoming cancer.
 

 
 *205
 

 Q\
 
 Has any doctor or dentist ever told you that the type of problem that you had, the dysplasia, the cancer in situ, that it had a tendency to recur, that was a part of how this disease operated?
 

 A:
 
 The only one that ever told me that was dayman.
 

 Q:
 
 Did you ask anyone else about that?
 

 A:
 
 I wasn’t smart enough.
 

 Q:
 
 Does that mean you didn’t?
 

 A:
 
 I had no knowledge back then.
 

 Q:
 
 Well, when did Dr. dayman tell you that?
 

 A:
 
 Probably in ‘90 when he did the surgery, and again in ‘92 when he did the surgeiy and again in ‘93 when he did the, surgery, and by then I was fed up and I was looking for more answers.
 

 Q:
 
 What is your recollection of how many of these surgeries Dr. dayman did?
 

 A:
 
 He resected my tongue in ‘89. By 1990 it was back. He did the C02 laser and biopsies again, and then again in ‘92 and again in ‘93, and again he was ready to follow through with another one within four our [sic] five months, and the longest I ever went without surgery is 18 months.
 

 [5]
 

 See
 
 McPeak v McPeak (On Remand),
 
 233 Mich App 483, 495-496; 593 NW2d 180 (1999) (a party may not leave it to this Court to search for authority to support its position).
 

 [6]
 

 See
 
 Heisler v Rogers,
 
 113 Mich App 630; 318 NW2d 503 (1982). The plaintiffs argued that the defendant’s failure to remove a needle from the plaintiff husband’s back after surgery represented a continuing wrong (assault and battery) that would extend the period of limitation. This Court rejected the argument on the basis that to allow the plaintiffs to extend the period of limitation by claiming a continuing wrong would be contrary to the purpose of statutes of limitation.
 
 Id.
 
 at 636-637. The Court noted that the concept of a continuing wrong has never been applied to an assault and battery or personal injury case.
 
 Id.
 
 at 636.