EGGLESTON v BIO-MEDICAL APPLICATIONS OF DETROIT, INC

Docket No. 223666. Submitted September 12, 2001, at Detroit. Decided
December 11, 2001, at 9:05 A.M. Leave to appeal sought.

Dennis Eggleston, who succeeded Donald Eggleston as personal rep-
resentative of the estate of Louisa Eggleston, deceased, brought an
action against Bio-Medical Applications of Detroit, Inc., and others,
alleging that the decedent died as a result of medical malpractice
by the defendants. The action was filed nearly three years after the
alleged malpractice and two years and two months after letters of
authority were issued by a probate court to Donald Eggleston. The
estate was without a personal representative for the fifteen months
between Donald Eggleston's death and the plaintiff's appointment
as successor personal representative. The court, Kaye Tertzag, J.,
granted summary disposition for the defendants, ruling that the
action was barred by the two-year period of limitation under MCL
600.5805(5) after rejecting the plaintiff's contention that the period
of limitation was tolled under MCL 600.5852. The plaintiff appealed.

The Court of Appeals *held*:

MCL 600.5852, which contains a "saving" provision applicable in
wrongful death cases, states in part that if a person dies before the
period of limitation has expired or within thirty days after the
period of limitation has expired, an action that survives by law may
be commenced by the personal representative of the estate of the
decedent at any time within two years after the letters of authority
are issued, but within three years after the period of limitation has
expired. Under the plain language of § 5852, the two-year grace
period begins when the probate court issues the letters of authority
to the first personal representative, regardless of whether the court
later appoints one or more successor personal representatives. In
this case, the two-year grace period began when Donald Eggleston
was appointed personal representative and it was not tolled during
the period between Donald Eggleston's death and the plaintiff's
appointment as successor personal representative. The decision to
wait fifteen months between Donald Eggleston's death and the
plaintiff's appointment as successor was a matter within the con-
trol of the plaintiff or the decedent's family. No legal disability or
affirmative act by another person prevented the plaintiff or the

decedent's family from petitioning the probate court for an earlier appointment of a successor personal representative that would have facilitated the timely filing of this action.

Affirmed.

LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — DECEDENTS — PERSONAL REPRESENTATIVES — SAVING PROVISION.

The period of limitation for a medical malpractice action is two years from the time the claim accrues; however, when a potential claimant dies before the period of limitation has expired or within thirty days after the period of limitation has expired, the personal representative of the decedent's estate may commence an action at any time within two years after the letters of authority are issued, but within three years after the period of limitation has expired; the two-year grace period begins when the probate court issues letters of authority to the first personal representative, regardless of whether the court later appoints one or more successor personal representatives (MCL 600.5805[5], 600.5852).

*Thomas W. Elkins*, for the plaintiff.

*Feikens, Stevens, Kennedy & Galbraith, P.C.* (by *Jon Feikens*), for the defendants.

Before: HOEKSTRA, P.J., and SAAD and WHITBECK, JJ.

SAAD, J. Plaintiff, Dennis Eggleston, as personal representative of the estate of Louisa Eggleston, deceased, appeals as of right from the October 25, 1999, order granting defendants Bio-Medical Applications of Detroit, Inc., and Fresenius Medical Care's motion for summary disposition. We affirm.

### I. NATURE OF THE CASE

In this medical malpractice case, we address an issue of first impression regarding the wrongful death "saving" provision that suspends the running of the statutory period of limitation until a personal representative is appointed to represent the estate. MCL 600.5852. Specifically, we address the question

whether a successor personal representative, appointed after the death of the initial personal representative, has "his own" two-year period to file an action on behalf of the estate or, if not, whether the two-year period is tolled during the time that the estate is without a personal representative.

Here, the probate court issued letters of authority to plaintiff as successor personal representative of decedent's estate approximately fifteen months after the original personal representative died and plaintiff filed the malpractice complaint almost three years after the alleged malpractice occurred. Plaintiff contends that he timely filed the complaint because the "saving" provision allowed him two additional years to do so, or, that the limitation period was tolled from the time the prior representative died until the court appointed a successor, plaintiff. We disagree and hold that, pursuant to the plain language of the statute, a successor personal representative does not acquire a new two-year period to bring an action on behalf of the estate and that, under these facts, the period of limitations was not tolled between the time the first representative died and a new representative was appointed.

## II. FACTS AND PROCEEDINGS

The dispositive facts are undisputed. Louisa Eggleston died on June 22, 1996. Plaintiff alleges that she died as the result of defendants' negligence in rendering dialysis treatment. Mrs. Eggleston received the treatment at a kidney dialysis clinic owned by Fresenius and operated by Bio-Medical. James Lawson, D.O., is a specialist in nephrology and is the chief executive officer of the clinic. According to

plaintiff, in June 1996, Mrs. Eggleston made numerous complaints to dialysis workers about tenderness and swelling at the dialysis graft site on her left arm. Plaintiff further alleges that the dialysis workers continued to use the graft and failed to refer her for treatment. After Mrs. Eggleston completed her dialysis treatment on June 21, 1996, plaintiff claims she telephoned the clinic to report that the swelling and pain at the graft site had worsened. Plaintiff also states that defendants' employees negligently failed to instruct her to seek immediate medical attention and that, as a result, Mrs. Eggleston died the following day.

On April 4, 1997, the probate court issued letters of authority to Donald Eggleston, Mrs. Eggleston's husband, as temporary personal representative of Mrs. Eggleston's estate to enable him to file an action on behalf of the estate. The court issued letters of authority to Donald Eggleston as personal representative on June 10, 1997, however, Donald Eggleston died of lung cancer on August 20, 1997. Thereafter, on December 8, 1998, the probate court issued letters of authority to plaintiff, Dennis Eggleston, as successor personal representative of the estate.

On June 10, 1998, before the probate court appointed plaintiff as successor, plaintiff's attorney sent a "notice of medical malpractice claim" to Bio-Medical indicating that the personal representative intended to commence a medical malpractice action "against all medical practitioners who provided medical services to [Mrs.] Eggleston at [the clinic] during the week prior to June 22, 1996, for kidney dialysis." The letter also states that Bio-Medical had to provide all relevant medical records within fifty-four days pur-

suant to "applicable Michigan statutes." The parties agree that the notice did not set forth the allegations of the malpractice and, thus, did not comply with the requirements of MCL 600.2912b(4).[1] Plaintiff also sent a subpoena for the medical records on October 8, 1998.

Bio-Medical did not forward Mrs. Eggleston's medical records to plaintiff's counsel. On April 1, 1999, plaintiff's attorney again sent a letter to Bio-Medical requesting the decedent's medical records and stating that he would file a motion for an order to show cause if Bio-Medical failed to produce the records within ten days. Fresenius sent a response on April 5, 1999, informing plaintiff's counsel that, likely because of address and delivery errors, the April 1999 letter was the first record request received by Bio-Medical and that the records would be copied and forwarded.

On June 7, 1999, plaintiff's attorney sent a notice of intent to file a claim against defendants for medical malpractice. This notice set forth the factual and legal

---

[1] MCL 600.2912b(4) provides:

(4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged by the claimant.

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

basis for the medical malpractice claim in compliance with MCL 600.2912b(4). Counsel for Fresenius sent a response on June 25, 1999, stating that he was not aware of any previous notices served on Fresenius or Bio-Medical. Two days later, on June 9, 1999, plaintiff filed his complaint alleging that Mrs. Eggleston's death was caused by defendant's medical malpractice and included an affidavit of merit as required by MCL 600.2912d.

In lieu of filing an answer, Bio-Medical and Fresenius filed a motion for summary disposition pursuant to MCR 2.116(C)(7). Defendants argued that, because the alleged malpractice occurred on June 21, 1996, plaintiff's medical malpractice action, filed on June 9, 1999, is barred by the two-year statute of limitations. Defendants further claimed that the saving provision of MCL 600.5852 does not apply because plaintiff failed to file the action within two years after the probate court appointed Donald Eggleston as temporary personal representative of the estate on April 4, 1997.[2]

In response, plaintiff argued that the estate could not take any action without the appointment of a personal representative and, therefore, the two years in the wrongful death saving provision did not begin to run until the probate court issued letters of authority to plaintiff as successor personal representative. Alternatively, plaintiff argued that the action was timely filed because the period of limitation was

---

[2] Defendants also claimed that plaintiff failed to wait 182 days after serving his notice of intent to sue before commencing the action as required by MCL 600.2912b(1) and that plaintiff could not take advantage of the tolling provision of MCL 600.5856(d) because the limitation period had already expired before the notice was sent.

tolled from the date Donald Eggleston died to the date on which the probate court appointed Dennis Eggleston.

Following oral argument, the trial court granted defendants' motion for summary disposition and adopted defendants' arguments in support of its decision. Thereafter, plaintiff voluntarily dismissed James Lawson and James Lawson, P.C.

### III. ANALYSIS

#### A. APPLICABLE LAW[3]

The statute of limitations for a wrongful death action is governed by the statute of limitations applicable to the underlying theory of liability. *Poffenbarger v Kaplan*, 224 Mich App 1, 6; 568 NW2d 131 (1997). Because plaintiff alleges a medical malpractice claim, the applicable statute of limitations provides that the action must be brought within two years of the accrual of the claim. *McKiney v Clayman*, 237 Mich App 198, 201; 602 NW2d 612 (1999); MCL 600.5805(5). A medical malpractice claim accrues at " 'the time of the act or omission which is the basis for the claim.' " *McKiney, supra* at 203,

---

[3] This Court reviews a trial court's decision to grant a motion for summary disposition under MCR 2.116(C)(7) de novo to determine if the moving party was entitled to judgment as a matter of law. *Rheaume v Vandenberg*, 232 Mich App 417, 420-421; 591 NW2d 331 (1998). In reviewing a motion under this rule, we consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings in favor of the nonmoving party. *Id.* at 421. Further, absent a disputed issue of fact, the determination whether a cause of action is barred by a statute of limitations is a question of law that this Court reviews de novo. *Colbert v Conybeare Law Office*, 239 Mich App 608, 613-614; 609 NW2d 208 (2000). We also review the interpretation of a statute de novo as a question of law. *Id.* at 614.

quoting MCL 600.5838a(1) as enacted by 1986 PA 178. However, MCL 600.5852 contains a "saving" provision applicable in wrongful death cases that states:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after the letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run.

In other words, "where a potential claimant dies within thirty days after the statute of limitations has expired or within the two-year period of limitation, the statute of limitations saving provision operates to suspend the running of the statute until a personal representative is appointed to represent the interests of the estate." *Lindsey v Harper Hosp*, 455 Mich 56, 61; 564 NW2d 861 (1997).

### B. APPLICATION OF THE LAW TO THE FACTS

Mrs. Eggleston died one day after the alleged medical malpractice occurred and, therefore, she died during the two-year period of limitation. Accordingly, the saving clause, MCL 600.5852, applies, giving the personal representative of Mrs. Eggleston's estate two years to file a medical malpractice claim after the probate court issued the letters of authority.

As noted above, the probate court appointed Donald Eggleston as temporary personal representative on April 4, 1997. Because this Court has held that, under the saving provision, *temporary* personal repre-

sentatives have the authority to "perform essentially the same functions and to bear the same responsibilities as personal representatives," *Lindsey, supra* at 66, Donald Eggleston could have filed an action against defendants any time before April 4, 1999. However, Donald Eggleston died on August 20, 1997, 4½ months after his appointment and before he filed a claim. Fifteen months later, on December 8, 1998, the probate court appointed plaintiff as successor personal representative and he filed this claim on June 9, 1999, nearly three years after the malpractice accrual date and two years and two months after the probate court issued letters of authority to Donald Eggleston.

Plaintiff contends that he timely brought this malpractice claim because he filed it within two years after the probate court issued *him* letters of authority as successor personal representative. Specifically, plaintiff claims that the saving clause grants a successor personal representative a new two-year grace period to file a malpractice claim if the prior personal representative's appointment is terminated through discharge, resignation, or death. To support his claim, plaintiff avers that the saving clause language referring to "*the* personal representative" who must file the lawsuit within two years after "*the* letters of authority are issued," evidences the Legislature's intent that the period of limitation begin to run when the probate court appoints the personal representative *who files the lawsuit*, rather than when the court first appoints *a* personal representative.

Unfortunately for plaintiff, to accept his argument we would have to give the saving clause an expansive reading, but the law requires that we give the saving

provision a narrow reading. As this Court held in *Lindsey*, "[a]s an exception to the statute of limitations, the saving provision should be strictly construed." *Lindsey, supra* at 65. Accordingly, we must reject plaintiff's expansive reading of the saving clause that would allow a new two-year limitation period to begin after any successor personal representative is appointed. The plain language of MCL 600.5852 states that "the personal representative of the deceased" may commence an action "at any time within 2 years after the letters of authority are issued." The Legislature could have employed, but did not, words suggesting that a new period of limitation begins after *each* set of letters of authority are issued or after the letters of authority are issued to the representative bringing suit.

Furthermore, the plain language of the saving clause refers to one set or "the" letters of authority, not multiple letters of authority. The statute applies to "the" personal representative, not "a" personal representative, which might suggest that any personal representative who receives letters of authority, initially or as a successor, has two years to file a claim. Clearly, if the Legislature had intended that the two-year grace period begin anew each time an appointment is terminated and a new appointment made, it could have easily done so by specifically stating as much. Absent language to that effect, we are bound to construe the saving provision strictly: the two-year limitation period begins when the probate court issues the letters of authority to the personal representative, regardless of whether the court later appoints one or more successor personal representatives.

Moreover, the interpretation of MCL 600.5852 that plaintiff urges is contrary to the well-established purpose of the saving clause and the limitation period. As our Court observed in *Poffenbarger, supra* at 9:

> The primary purpose of courts in interpreting statutes is to discover and give effect to the intent of the Legislature. Statutes of limitation will be construed to advance the policy that they are designed to promote. While one policy is to afford plaintiffs a reasonable opportunity to bring suit, statutes of limitation also further "the sound public policy of establishing a time frame beyond which defendants will not be forced to defend." [Citations omitted.]

Our Court has characterized the purpose of the saving provision as a way "to preserve actions that survive death in order that the representative of the estate may have a reasonable time to pursue such actions." *Lindsey, supra* at 66. On the other hand,

> [s]tatutes of limitation are designed to encourage the rapid recovery of damages, to penalize plaintiffs who have not been assiduous in pursuing their claims, to afford security against stale demands when the circumstances would be unfavorable to a just examination and decision, to relieve defendants of the prolonged threat of litigation, to prevent plaintiffs from asserting fraudulent claims, and to remedy the general inconvenience resulting from delay in asserting a legal right that is practicable to assert. [*Sills v Oakland General Hosp*, 220 Mich App 303, 312; 559 NW2d 348 (1996).]

Therefore, as a general rule, "Courts should uphold statutes of limitation unless the consequences are so harsh and unreasonable that they effectively divest a plaintiff of the court access intended by the grant of the substantive right." *Id.*

Here, construing the statute according to its plain terms better serves the purpose of the saving clause by allowing a personal representative *reasonable* time to discover a decedent's potential claims while protecting the underlying principles of the limitation period by encouraging the prompt filing of claims and relieving "defendants of the prolonged threat of litigation." *Id.* Moreover, limiting the grace period to one two-year period encourages personal representatives to diligently pursue potential claims and encourages successor personal representatives to continue that diligence and to make use of information already gathered by the original representative.

We also believe that construing the statute as written does not result in consequences "so harsh and unreasonable" that it denies the personal representative court access. The record reflects that Donald Eggleston contemplated filing a lawsuit when the probate court appointed him as temporary personal representative and he had reasonable time thereafter to pursue the claim. Furthermore, plaintiff did not petition the court to become successor personal representative until fifteen months after Donald Eggleston's death. While Donald Eggleston's death may have been unexpected, plaintiff's delay in petitioning for letters of authority was well within plaintiff's control. To allow an additional two years from the time plaintiff chose to seek his appointment to pursue a malpractice claim would be tantamount to sanctioning his tardiness and would encourage personal representatives to sit on the rights they could assert on behalf of the decedent.

For similar reasons, we reject plaintiff's alternative argument that, if the saving clause period of limita-

tion began to run when the probate court issued letters of authority to Donald Eggleston, it was tolled during the fifteen-month period when the estate had no personal representative.

Plaintiff cites *Wright v Estate of Treichel,* 36 Mich App 33; 193 NW2d 394 (1971), in support of his claim. In *Wright,* the administrator of the defendant-estate died 3½ months after his letters of authority were issued. *Id.* at 35-36, 39. This Court held that the plaintiffs' service of the complaint on the attorney for the estate was defective because a successor administrator, the proper party to the suit, had not been appointed and because the attorney-client relationship between the administrator and his attorney had ceased with the death of the administrator. *Id.* at 35, n 1, 36-37. However, this Court also held that, because an administrator is essential for obtaining jurisdiction over an estate, the period of limitation was tolled while the estate was without an administrator.[4] *Id.* at 39.

Later, in *Turner v Mercy Hosps & Health Services of Detroit,* 210 Mich App 345; 533 NW2d 365 (1995), the probate court issued letters of authority to the plaintiff as personal representative on February 13, 1990, but suspended the appointment on May 13, 1991, for the plaintiff's failure to file an estate

---

[4] On rehearing, this Court affirmed the trial court's dismissal of the plaintiffs' claim after learning that they had failed to serve a successor administratrix who performed those duties for eight months after her appointment by the probate court. *Wright v Estate of Treichel (On Rehearing),* 47 Mich App 626; 209 NW2d 806 (1973). Though she was appointed after the plaintiffs filed the complaint, this Court found the plaintiffs' failure to serve her was unreasonable, particularly because they were "aware of the absence of an administrator and the attendant service of process difficulties connected therewith." *Id.* at 629.

accounting. *Id.* at 347-348. The probate court reappointed the plaintiff on May 7, 1992, and she filed the wrongful death claim on June 4, 1992, more than two years and four months after the court issued the original letters of authority. *Id.* at 347.

Relying on *Wright*, the plaintiff argued that the period of limitation was tolled while her letters of authority were suspended and that, before 1992, she had no reasonable cause to believe that the defendants' malpractice caused the decedent's death. *Id.* at 347. This Court disagreed and held that the tolling of a limitation period implies "the existence of an obstacle that is beyond the control of the plaintiff, such as a legal disability or affirmative act on the part of another person that prevents the timely bringing of a claim." *Id.* at 350. This Court further stated that, as a general rule, a limitation period is tolled only by a substantive restriction on the plaintiff's ability to bring an action in a timely manner, not by mere procedural or technical irregularities the correction of which is within the control of the plaintiff. *Id.* This Court distinguished the holding in *Wright*, and observed:

> While, the plaintiffs in *Wright* had attempted to bring suit against the defendant estate, plaintiff here is the estate's personal representative, who is attempting to bring suit against defendants over whom personal jurisdiction is not an issue. Thus, while the plaintiffs in *Wright* were prevented from commencing the lawsuit by an event beyond their control—i.e., the death of the estate administrator—no such obstacle prevented plaintiff here from commencing a timely lawsuit against defendants. Indeed, it is undisputed that plaintiff's original letters of authority were suspended when she, or her attorney acting on her behalf, failed to file

> a required estate accounting. Plaintiff's apparent negligence
> does not constitute a tolling act or event. [*Id.* at 351-352.]

Here, as in *Turner*, plaintiff is the personal representative attempting to bring suit and plaintiff was not prevented from bringing the lawsuit by an event beyond his control.

While we appreciate that Donald Eggleston's death was tragic and beyond the control of the decedent's family, no "legal disability or affirmative act" by another person prevented plaintiff or the decedent's family from petitioning the court to appoint a new personal representative in order to timely file this claim. Further, no court delay or other legal impediment caused the delay. In fact, the court appointed plaintiff as successor personal representative on the very day he petitioned for his letters of authority. Accordingly, though we sympathize with the family for the circumstances that required them to seek the appointment of a new personal representative, the decision to wait fifteen months to seek the appointment was a matter within plaintiff's or the family's control.

For these reasons, we affirm the trial court's order granting summary disposition to defendants. The action was filed more than two years after the probate court issued letters of authority to Donald Eggleston as temporary personal representative and the grace period was not tolled during the period between Donald Eggleston's death and plaintiff's appointment as successor.[5]

Affirmed.

---

[5] Because we affirm the trial court's grant of summary disposition on statute of limitations grounds, we decline to address plaintiff's remaining claim regarding appropriate notice.