# STATE OF MICHIGAN

# COURT OF APPEALS

---

RICHARD A. KRUEGER and MAUREEN
FALLON-KRUEGER,

       Plaintiffs-Appellants,

v

SPECTRUM HEALTH SYSTEMS and SAM J.
GIOVANNUCCI, M.D.,

       Defendants-Appellees.

UNPUBLISHED
September 27, 2016


No. 328787
Kent Circuit Court
LC No. 15-003966-NO

---

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

This appeal arises from the trial court's dismissal of the medical malpractice claim plaintiffs Richard Krueger and his wife Maureen Fallon-Krueger filed against defendants Spectrum Health Systems and Sam J. Giovannucci, M.D., on May 1, 2015. Plaintiffs appeal as of right the trial court's order granting summary disposition to defendants pursuant to MCR 2.116(C)(7) (expiration of statute of limitations). For the reasons stated below, we reverse the trial court's order and remand the matter to the court for further proceedings.

## I. STATEMENT OF FACTS

The basic facts of the case are undisputed. Dr. Giovannucci had been the primary care physician for Richard Krueger since the mid-1980s. In March 2007, after Krueger experienced a significant period of abdominal pain and diarrhea, Dr. Giovannucci referred Krueger to gastroenterologist Dr. Randall Meisner for evaluation. Tests conducted as part of Dr. Meisner's evaluation showed that Krueger had a small (3.7 cm maximal dimension) abdominal aortic aneurysm, often referred to as an AAA. In a letter dated March 14, 2007, Dr. Meisner advised Dr. Giovannucci of the results of his evaluation of Krueger, including his discovery of the abdominal aortic aneurysm, and at an April 2, 2007 office visit, Dr. Giovannucci discussed the abdominal aortic aneurysm with Krueger. Krueger continued to see either Dr. Giovannucci or his physician's assistant annually for the next seven years, and neither Dr. Giovannucci nor his physician's assistant ordered any diagnostic testing to check on the status of Krueger's abdominal aortic aneurysm. Krueger's aneurysm had grown to 7 cm maximal dimension when it burst on April 10, 2014.

-1-

On November 25, 2014, plaintiffs served on defendants a notice of intent (NOI) to file a claim. On May 1, 2015, they filed a medical malpractice complaint alleging that the applicable standard of care required Dr. Giovannucci to arrange for annual diagnostic testing of Krueger's aneurysm or to refer him to a specialist for such testing, and that Dr. Giovannucci breached the standard of care by failing to do either. Accompanying the complaint was an affidavit of merit signed by Neil J. Farber, M.D., also asserting that the applicable standard of care called for Dr. Giovannucci to "arrange yearly Follow-up by ultrasound or CT" and that Dr. Giovannucci's failure to arrange for such testing breached the standard of care.

On June 29, 2015, defendants filed a motion for summary disposition based on MCR 2.116(C)(7). Noting that medical malpractice claims must be brought within six years of the act or omission that is the basis of the claim, defendants asserted that plaintiffs' claim was barred because Dr. Giovannucci's alleged failure to "arrange for annual diagnostic testing" occurred in March 2007, more than eight years before plaintiffs filed their complaint. Plaintiffs responded that Dr. Giovannucci violated the standard of care on numerous occasions after 2007, most recently in February 2014, when Krueger presented for his most-recent annual physical examination and Dr. Giovannucci failed to assess the size of the aneurysm despite knowing that it existed and that he was supposed to monitor its growth. Plaintiffs contended that such failure constituted a separate and independent act of malpractice and that they had filed their complaint within two years of this incidence.

The parties maintained their respective positions at the July 17, 2015 hearing on defendants' summary disposition motion. Defendants argued in addition that plaintiffs were attempting to assert a theory of continuous wrong that reached back to March 2007, and "essentially gave rise to a new accrual date every year at the time of [Krueger's] annual physical examination." Plaintiffs asserted that they were not alleging a continuing wrong, but that a "new tort occurred on February 7, 2014, when [Krueger] was treated for his annual physical and no diagnostic testing was arranged for." To the extent that they had not clearly articulated this allegation in their complaint, plaintiffs requested leave to amend the complaint. Defendants opposed their request, arguing that amendment would be futile because any duty Dr. Giovannucci owed to Krueger arose in 2007, when Dr. Giovannucci received Dr. Meisner's letter of March 14, 2007, and did not set up a future schedule for annual testing. Consequently, defendants argued, each annual examination without diagnostic testing, including the one in February 2014, simply constituted another occurrence of the same omission.

The trial court granted defendants' summary disposition motion in a July 27, 2015 opinion and order, reasoning that plaintiff's claim was time-barred because Dr. Giovannucci's duty arose in March 2007. Consistent with defendants' reasoning, the trial court also determined that granting leave to amend the complaint would be futile because "[Krueger's] arguments are an impermissible backdoor attempt to stretch an omission in 2007 into a 'continuing-wrong.' " This appeal followed.

II. ANALYSIS

On appeal, plaintiffs contend that the trial court erred by misconstruing their pleadings to allege a claim for medical malpractice based on acts and omissions committed in March 2007,

rather than on Dr. Giovannucci's failure to monitor Krueger's aneurysm by ordering the appropriate diagnostic tests every year. We agree.

We review de novo a trial court's decision on a motion for summary disposition, as well as whether the trial court correctly selected, interpreted, and applied the relevant statutes. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). Summary disposition under MCR 2.116(C)(7) "is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations." *Id*. at 522. "In reviewing a motion under Subrule (C)(7), the circuit court 'must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor . . . .' " *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014), quoting *Diehl v Danuloff*, 242 Mich App 120, 123; 618 NW2d 83 (2000).

This Court discussed at length the establishment of an accrual date for medical malpractice claims in *Kincaid*, 300 Mich App at 524-531. We first noted that, because the Legislature did not originally provide an accrual point for medical malpractice claims, courts relied upon the common-law "last-treatment rule." The essence of the last-treatment rule was that "the cessation of the ongoing patient-physician relationship marks the point where the statute of limitations begins to run." *Kincaid*, 300 Mich App at 524 (quotation marks and citation omitted). However, in 1986, the Legislature abolished the last-treatment rule and established that the accrual date for medical malpractice claims would be determined based on "the act or omission that occasioned the harm."[1] *Id*. at 525.

Accordingly, a claim based on allegations of medical malpractice "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(1). A plaintiff may begin a medical malpractice claim within two years of the act or omission upon which the claim is based, "or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." MCL 600.5838a(2); MCL 600.5805(6). However, barring certain exceptions inapplicable to the case at hand,[2] "the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim." MCL 600.5838a(2).

We explained that reference in MCL 600.5838a(1) to "the act or omission" does not foreclose the possibility that a plaintiff's injury can be related to multiple acts or omissions:

> [W]hile the Legislature referred to "the act or omission" that is the basis for "the claim," MCL 600.5838a(1), the Legislature did not limit a plaintiff to asserting a single claim for medical malpractice for any given injury. Because a plaintiff's injury can be causally related to multiple acts or omissions, it is possible for the

[1] 1986 PA 178, § 1, adding MCL 5838a, effective October 1, 1986.

[2] The exceptions involve plaintiffs who are minors or insane at the time their cause of action accrues. See MCL 600.5851(7) and (8).

plaintiff to allege multiple claims of malpractice premised on discrete acts or omissions—even when those acts or omissions lead to a single injury—and those claims will have independent accrual dates determined by the date of the specific act or omission at issue. [*Kincaid*, 300 Mich App at 525.]

We cautioned, however, that a plaintiff's license "to plead multiple accrual dates does not mean that the plaintiff may resurrect the last-treatment rule through ambiguous or creative pleading." *Id*. at 525-526. To establish an accrual date, "[a] plaintiff must provide sufficient facts in his or her complaint to give the defendant notice of the claims against which he or she must defend . . . ." *Id*. at 529, citing MCR 2.111(B)(1). "Depending on the complexity of the acts or omissions at issue, this may require a plaintiff to identify with some degree of specificity how the physician breached the standard of care." *Kincaid*, 300 Mich App at 530.

In the instant case, plaintiffs' NOI alleged the following:

> Not long after Dr. Meisner advised Dr. Giovannucci of Mr. Krueger's abdominal aortic aneurysm, Mr. Krueger saw Dr. Giovannucci who told Rick [Krueger] that he had "a small abdominal aortic aneurysm which we'll have to keep an eye on."

> Dr. Giovannucci and his Physician's Assistants continued to see Richard Krueger annually for Physicals. No follow up angiography nor [sic] referrals were made which would have enabled Dr. Giovannucci or a Pulmonary Specialist to know about the size of the patient's abdominal aortic aneurysm, as time went by, and on April 10, 2014 it ruptured at a time when it was greater than 7 cm.

Plaintiffs asserted that the applicable standard of practice or care required that Dr. Giovannucci "either order periodic diagnostic angiography to ascertain the size of the aortic aneurysm after he became aware of it in March of 2007, or refer his patient to a Pulmonary Specialist who had agreed to assume that responsibility."[3] Plaintiffs further alleged that, in order to comply with the standard of practice or care, Dr. Giovannucci "should have annually ordered appropriate diagnostic angiography to ascertain the size of his patient's aortic aneurysm and he should have referred his patient to a Pulmonary Specialist for testing and care." Finally, plaintiffs contended that, "[b]y not keeping track of the size of his patient's aortic aneurysm, Dr. Giovannucci . . . was not able to as he put it to his patient in 2007 'keep an eye on it,' and it was never surgically repaired by nonurgent surgery and it therefore burst when it was greater than 7 cm on April 10, 2014 . . . ."

Plaintiffs' complaint provided a similar statement of the standard of care and of Dr. Giovannucci's alleged breach:

---

[3] Presumably, the "Pulmonary Specialist" referenced is Dr. Meisner, who is in fact a gastroenterologist.

The Applicable Standard of Care or Practice required that after Dr. Giovannucci, an agent of Spectrum Health Systems, became aware of his patient's abdominal aortic aneurysm of 37 mm[4] maximal dimension on or about March 14, 2007, he arrange for annual diagnostic testing of the aneurysm and at the appropriate time, refer him for repair of the aneurysm.

Dr. Giovannucci, an agent of Spectrum Health Systems, breached the Applicable Standard of Care or Practice by not arranging for annual diagnostic testing of his patient's abdominal aortic aneurysm, and as a result, that aneurysm burst on April 10, 2014 . . . .

The accompanying affidavit of merit also asserted that the applicable standard of care called for Dr. Giovannucci to "arrange yearly Follow-up by ultrasound or CT" and that Dr. Giovannucci's failure to arrange for such testing breached the standard of care.

Plaintiffs contend that these pleadings, when viewed in the light most favorable to them, adequately put defendants on notice that they must defend against allegations that Dr. Giovannucci had an annual duty to arrange for diagnostic testing of Krueger's aneurysm and that he breached this duty anew at every annual examination where he failed to conduct or order such testing. Defendants assert to the contrary that the plain language of the complaint alleges only one breach of the standard of care that occurred in March 2007, when Dr. Giovannucci did not arrange for future testing. In support of their argument, defendants stress the language in plaintiffs' complaint asserting that, once Dr. Giovannucci became aware of Krueger's aneurysm in March of 2007, the applicable standard of care required him to "arrange for annual diagnostic testing of the aneurysm" and that he breached the standard "by not arranging for annual diagnostic testing."

Read in isolation, one could see how the complaint as worded could be interpreted as identifying one act of malpractice in 2007 in the form of a failure to arrange for yearly follow-up testing. Read in context, however, the meaning is clear, and the trial court erred by not reading the pleadings in the light most favorable to plaintiffs. *Tryc*, 451 Mich at 134; *Kincaid*, 300 Mich App at 522. Reading the complaint alongside Dr. Farber's affidavit of merit and plaintiffs' NOI makes it clear that plaintiffs are alleging that Dr. Giovannucci had a duty to monitor Krueger's aneurysm by ordering the appropriate test every year. Plaintiffs state in the NOI that Dr. Giovannucci should have "annually ordered appropriate diagnostic angiography to ascertain the size of his patient's aortic aneurysm," and that he breached his duty "by not keeping track of the size of [Krueger's] aneurysm." Furthermore, Dr. Farber's affidavit of merit states that after becoming aware of Krueger's aneurysm, Dr. Giovannucci should have arranged yearly follow-up by ultrasound or CT. Thus, when the NOI is read alongside the complaint and affidavit of merit, it is obvious that plaintiffs did not allege that Dr. Giovannucci breached the standard of care when he neglected to set up a long-range timetable of future testing in 2007. Rather, they

---

[4] Plaintiffs alternate between centimeters (cm) and millimeters (mm) when describing the dimensions of Krueger's aneurysm. Ten millimeters equals one centimeter. *Merriam-Webster's Collegiate Dictionary* (2003), p 782.

alleged that Dr. Giovannucci breached the standard of care by failing to order testing on an annual basis in each of the following years in order to monitor the size of Krueger's aneurysm.

Defendants contend that, even if the complaint does allege annual breaches of the applicable standard of care, such alleged breaches do not give rise to discrete acts or omissions that would extend the accrual date of plaintiffs' claim beyond 2007 because any omission subsequent to 2007 simply continued the allegedly improper omission first committed in March 2007. We disagree.

We established that adherence to a prior diagnosis or treatment plan does not constitute a separate act or omission for purposes of the accrual date of a medical malpractice claim in *McKiney v Clayman*, 237 Mich App 198, 205-208; 602 NW2d 612 (1999). We revisited the issue of accrual dates in *Kincaid*, explaining that our *McKiney* decision did not immunize from liability a physician who simply adhered "to a mistaken diagnosis or treatment plan at all subsequent appointments." *Kincaid*, 300 Mich App at 535. Rather, "a physician must act within the standard of care on *each* visit, and a physician's continued adherence to a particular diagnosis or treatment plan at a later appointment might constitute a breach of the standard of care if there are facts that show that continued adherence was unreasonable." *Id*.

Defendants rely on *Kincaid* to argue that, because plaintiffs did not offer facts indicating that Krueger "presented with new or worsening symptoms" at the February 7, 2014 examination, any alleged failure to order a diagnostic test of Krueger's aneurysm at that examination did not constitute a separate breach of the standard of care and, therefore, cannot extend the accrual date of plaintiffs' claim.

Defendant's reliance is misplaced. The plaintiff in *Kincaid* injured her left foot when she dropped a piece of lumber on it. *Kincaid*, 300 Mich App at 517. The defendant doctor, Cardwell, treated her five times between April 25, 2008, and July 9, 2008, while the pain in her foot became worse and her foot more discolored. *Id*. at 518-519. Eventually, gangrene developed in her left great and fourth toes, and the defendant referred her to another doctor for amputation of those two toes. *Id*. at 519. However, because there were by this time "no bypassable blood vessels with which to revascularize her foot[,]" the surgeon amputated the plaintiff's left leg below the knee. *Id*.

Kincaid filed a medical malpractice claim based on acts and omissions committed during the course of Cardwell's allegedly erroneous course of treatment. See *id*. at 519. Significantly, however, Cardwell's course of treatment was founded on the underlying breach, which was the initial substandard assessment and treatment. See *id*. at 533. Thus, Cardwell's pursuit of the treatment plan as intended constituted a continuation of that initial breach. In contrast, in the instant case, the original diagnosis was not the underlying breach. Rather, Dr. Giovannucci received the correct diagnosis and formulated the correct assessment plan in light of the known presence of the aneurysm. The breaches came later, when Dr. Giovannucci failed to assess the growth of Krueger's accurately diagnosed and charted aneurysm each time Krueger presented for an annual check-up for purposes of assessing his health and wellbeing. Dr. Giovannucci failed

to implement *any* treatment, even after he indicated, "we'll have to keep an eye on" the aneurysm.[5]  Thus, unlike *Kincaid* and *McKiney*, this is not a case where plaintiffs could allege that defendants misdiagnosed the medical situation or failed to have a plan of treatment that complied with the applicable standard of care.  Dr. Giovannucci had a correct diagnosis and set forth a plan of treatment; plaintiffs allege simply that, at each annual examination, he failed to implement his plan, and in that regard, he breached the standard of care at each exam, including in February of 2014, while there was still time for surgical intervention and repair.  As such, the accrual dates for the malpractice are tied to each annual breach, not to the original diagnosis.[6]

Further, defendants' assertion that, because Krueger did not present with worsening symptoms Dr. Giovannucci did not have a new duty to order a diagnostic test at the February 7, 2014 examination, overlooks the fact that the change in the aneurysm's status, and hence in Krueger's condition, was detectable only by means of the tests Dr. Giovannucci was not ordering.[7]  It also overlooks the fact that the standard of care called for monitoring through annual tests, regardless of how Krueger presented.  Further, from the fact that the aneurysm was nearly twice its original size when it burst approximately two months after the February examination, one might reasonably conclude that Krueger did present on February 7, 2014, with a worsening, albeit undetected for lack of testing, condition.

When viewed in the light most favorable to plaintiffs, *Kincaid*, 300 Mich App at 522, plaintiffs' pleadings presented facts sufficient to put defendants on notice of plaintiffs' allegations that Dr. Giovannucci had a duty to monitor Krueger's aneurysm by ordering the appropriate test every year and that the doctor breached the duty every year he failed to do so, *id*. at 529.  Defendants' argument that any alleged failure to test in the years subsequent to 2007 constituted a continuing wrong fails because, unlike the plaintiffs in *McKiney* and *Kincaid*, plaintiffs do not base their allegations on an initial misdiagnosis and erroneous treatment plan.  The breaches upon which plaintiffs base their claim did not occur in 2007, but every year thereafter when Dr. Giovannucci failed to assess the growth of Krueger's accurately diagnosed and charted aneurysm at Krueger's annual check-ups.  The most recent alleged breach occurred

---

[5] The "keep an eye" statement occurs in the NOI, but not the complaint.  The NOI is "other documentary evidence," MCR 2.116(G)(5), and may be considered along with plaintiffs' complaint in deciding a (C)(7) motion.  *Kincaid*, 300 Mich App at 532.

[6] As plaintiffs aptly point out, in reaching its result, the trial court had to conclude that the only claim of malpractice that plaintiffs had in this case was for acts and omissions that occurred in 2007.  But as noted above, the acts of malpractice in this case transpired later, when Dr. Giovannucci failed each year to either order angiographic testing or refer Krueger to a specialist for such testing in order to monitor the growth of the known, documented, aneurysm as planned.

[7] It appears that the trial court also misapprehended the nature of an abdominal aortic aneurysm.  A change in symptoms is not what precipitates a need for further analysis or a need to re-assess the initial conclusion.  Rather, time is the only factor that causes the aneurysm to grow in size (as blood pressure continues to weaken the aortic wall), and surgery or other intervention is necessary when the aneurysm reaches 5 centimeters.

February 7, 2014, less than two years prior to plaintiffs' filing their malpractice complaint. For these reasons, we conclude that the trial court erred in granting summary disposition to defendants under MCR 2.116(C)(7) on the ground that plaintiffs' complaint was time-barred.

In light of our reasoning in the disposition of this issue, we need not address plaintiffs' second issue on appeal, which is whether the trial court erred by perceiving plaintiffs' complaint as alleging a continuous wrong and thus concluding that amendment of the complaint would be futile.

We reverse the trial court's July 27, 2015 order granting defendants' summary disposition, and remand the matter to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering