SCHNEPF v. THOMAS L. McNAMARA, INC.

1. CONTRACTS—FINDING OF JURY—MODIFICATION—EVIDENCE.
   Finding of jury that plaintiff and defendant had agreed not to terminate written contract of plaintiff to supply sufficient trucks to remove excavated dirt from sewer trench and haul sand backfill after it became necessary to haul the sand from a greater distance and to modify it later as to payments and had not entered into a new oral agreement replacing the former written agreement *held*, not contrary to the great weight of the evidence.

2. SAME—BREACH—WAIVER OF RIGHT TO TERMINATE.
   Plaintiff trucker who continued to haul sand backfill from new location without protest and without claiming breach of written contract or asserting its termination lost his right, if any, to terminate the contract and declare it forfeited for such breach.

3. SAME—BREACH—WAIVER—CONTINUANCE OF PERFORMANCE.
   A plaintiff who was injured by a material breach of written contract but nevertheless continued to perform thereunder was not thereafter excused from ceasing performance without responding in damages for such cessation, the continuance of performance after substantial breach amounting to a waiver.

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 12 Am Jur, Contracts § 390.

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted October 7, 1958. (Docket No. 7, Calendar No. 47,566.) Decided December 2, 1958.

Action by John Schnepf against Thomas L. Mc-Namara, Inc., a Michigan corporation, for breach of contract to employ trucks on construction job. Cross declaration for damages resulting from plaintiff's failure to furnish required trucks and services. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Charles A. Hills,* for plaintiff.

*Joseph W. Planck,* for defendant.

DETHMERS, C. J. Plaintiff declared on a written contract for sums due thereunder, for further sums due under an oral contract allegedly entered into on termination of the former, and for damages for breach of the latter. Defendant filed a cross declaration for damages resulting from plaintiff's alleged breach of the written contract. A jury returned a verdict of $10,000 for defendant. Plaintiff appeals.

Defendant had contracted to construct a sewer for the city of Saginaw at a stipulated price, to complete it by a certain date and to pay a penalty for each day's delay beyond that date. Defendant made a subcontract with plaintiff, under which plaintiff was to haul away all dirt excavated on the job and to haul back sand from a specified location to be used as backfill. The subcontract was as follows:

"March 11, 1954. Agreement between Thos. L. McNamara, Incorporated and J. Trucking Co. [plaintiff]. J. Trucking Co. agrees to haul all necessary sand backfill from Ojibway island to Rust street job and to haul away to dumps designated

by city all excavation from sewer trenches for the
sum of $22,000. At all times there shall be sufficient
trucks on job as not to hinder production.  Thos. L.
McNamara, Inc. agrees to pay J. Trucking Co. ac-
cording to estimates received from City.

Signed   /s/ Thomas L. McNamara,
Thomas L. McNamara, Inc.
/s/ John M. Schnepf per JHS,
J. Trucking Co."

Operations commenced under the subcontract on
March 22, 1954, and continued until April 13, 1954.
On the latter date it became necessary for defendant
to procure backfill sand from a different source
because the sand taken from Ojibway island, as
mentioned in the subcontract, was rejected as un-
suitable by the highway department.  The location
of the new source was at a slightly greater distance
from the sewer construction job.  For a number of
days the backfill sand was hauled from the new loca-
tion by plaintiff, who at that time made no claim of
breach or termination of the written contract.  Dur-
ing that period, after the location change, defendant
paid plaintiff $2,640 in instalments on the written
contract.  Defendant's president testified that he
had recognized, however, that plaintiff was entitled
to have the subcontract price increased somewhat
to fairly compensate him for the additional hauling
occasioned by the change of location of the source
of backfill sand and that, accordingly, the parties
met on April 21st to discuss an adjustment of the
$22,000 contract price.  No agreement was reached
with respect to the amount of such increase or ad-
justment.  What was agreed upon at that meeting
is the subject of sharp dispute in this case.  Plaintiff
claims that the written contract had been breached
and renounced by the defendant's changing the loca-
tion of the sand loading operations, and that plain-
tiff was thereby relieved of his contract obligation

of having a sufficient number of trucks on the job at all times so as not to hinder production. Plaintiff claims that, under such circumstances, the parties on April 21st entered into a new oral agreement terminating the written agreement and providing that defendant was to hire 7 of plaintiff's trucks at a specified hourly rate with no undertaking by plaintiff to furnish more than that number of trucks. Defendant, on the other hand, denies that the written contract was terminated by agreement or otherwise, and claims that, although defendant had expressed a willingness to increase the total contract price, no definite amount was agreed upon, but defendant did agree that meanwhile, and until such price agreement was reached, it would pay instalments on the contract price on the basis of an hourly rate for each truck with the provision that when the total contract price was finally agreed upon instalment payments thereafter would be adjusted to compensate for overpayment or underpayment in past instalments, as the case might be, as determined by the amount of the contract price ultimately agreed upon. The payment of such instalments apparently was in line with the provision of the written contract that defendant was to make payments to plaintiff on the basis of estimates received from the city as to the proportion of the total job completed from time to time. Defendant's claim is, therefore, that plaintiff's obligation under the written contract to keep a sufficient number of trucks on the job continued, that plaintiff failed to do so, thereby breaching the contract and causing defendant great damage, and that, for that reason, defendant finally terminated the contract at the end of April.

The controlling question is what was agreed upon orally on April 21st. The jury clearly accepted defendant's version. We cannot say that this was contrary to the great weight of the evidence.

Against that background we consider plaintiff's contentions on appeal.

Did defendant's change of the location for sand loading operations constitute a breach of contract relieving plaintiff from the obligation to supply a sufficient number of trucks at all times? Plaintiff continued operations under the written contract for a number of days after such change of location and up to the April 21st meeting without protest and without claiming breach of contract or asserting its termination. The record does not indicate that he made such claim at any time prior to suit. By continuing thus to perform and to accept payments under it, as above noted, he lost his right, if any, to terminate the contract and declare it forfeited. *Robinson* v. *Lake Shore & M. S. R. Co.*, 103 Mich 607.

"It was appellant's duty, when it discovered the apparent breach of the contract, if it intended to insist upon a forfeiture, to do so at once. By permitting appellees to proceed with the performance of the contract, it waived a breach." *Grayson-McLeod Lumber Co.* v. *Slack*, 102 Ark 79, 83 (143 SW 581).

" 'Where there has been a material breach which does not indicate an intention to repudiate the remainder of the contract, the injured party has a genuine election either of continuing performance or of ceasing to perform. Any act indicating an intent to continue will operate as a conclusive election, *not indeed of depriving him of a right of action for the breach which has already taken place,* but depriving him of any excuse for ceasing performance on his part. Anything which draws on the other party to execute the agreement after the default in respect of time or which shows that it is deemed a subsisting agreement after such default will amount to a waiver.' (Italics ours.) 12 Am Jur, Contracts, § 390, p 968." *Sinclair Refining Co.* v. *Costin* (Tex Civ App), 116 SW2d 894, 898.

There having been testimony, evidently accepted as true by the jury, that the written contract continued in effect after the location change and after the April 21st meeting, obligating plaintiff to continue to furnish a sufficient number of trucks at all times, it was proper for the court to permit the jury to consider whether plaintiff had breached his agreement in that regard, to submit to the jury a special question as to whether plaintiff had at all times provided sufficient trucks on the job, and to permit defendant to introduce proofs of damages to it resulting from such claimed breach by plaintiff.

Affirmed, with costs to defendant.

CARR, KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.