BLAZER FOODS, INC v RESTAURANT PROPERTIES, INC

Docket No. 232489. Submitted May 7, 2003, at Grand Rapids. Decided
    October 30, 2003, at 9:00 A.M.

> Blazer Foods, Inc., and others brought an action in the Kalamazoo
> Circuit Court against Restaurant Properties, Inc., and others, alleg-
> ing breaches of contracts, tortious interference with prospective
> economic advantages, and corporate usurpation. The action arose
> out of the plaintiffs' contracts with the defendants for the establish-
> ment and management of Hot 'n Now restaurants. The court, Philip
> D. Schaefer, J., granted summary disposition in favor of the defen-
> dants on the basis, in part, that the action was barred by the appli-
> cable statutes of limitations. The plaintiffs appealed, arguing, in
> part, that the continuing wrong theory of recovery or the continu-
> ing services theory of recovery applied to prevent the action from
> being barred by the applicable statutes of limitations.
>
>    The Court of Appeals *held*:
>
>    Neither the continuing wrong theory of recovery, whose applica-
> tion is limited to cases involving trespass, nuisance, and civil rights,
> nor the continuing services theory of recovery, whose application
> is limited to cases involving the continued performance of personal
> services despite the absence of payment for those services, applies
> to this action. The trial court properly concluded that the action is
> barred by the applicable statutes of limitations.
>
>    Affirmed.

TORTS — INTERFERENCE WITH CONTRACTS — INTERFERENCE WITH PROSPECTIVE
    ECONOMIC ADVANTAGES.

> A claim of tortious interference with a contract or a prospective eco-
> nomic advantage is complete for purposes of pleading the claim in
> a proper complaint where the plaintiff can show the existence of a
> valid business relationship or the expectation of such a relationship
> between the plaintiff and some third party, knowledge of the rela-
> tionship or expectation of the relationship by the defendant, and an
> intentional interference causing termination of the relationship or
> expectation that results in damages to the plaintiff.

*Silverman, Smith, Bingen & Rice, P.C.* (by *Robert W. Smith* and *Stephen M. Rice*), for the plaintiffs.

*Varnum, Riddering, Schmidt & Howlett, LLP* (by *John W. Allen* and *Eric J. Guerin*), for the defendants.

Before: SAAD, P.J., and METER and OWENS, JJ.

METER, J. Plaintiffs appeal as of right from an order granting summary disposition in favor of defendants in this mixed contract and tort action involving a suit by plaintiff franchisees to recover damages allegedly arising from defendants' contractual breaches and corporate mismanagement. We conclude that neither the "continuing wrong" nor the "continuing services" theory of recovery applies to the instant case, and we therefore affirm the trial court's conclusion that plaintiffs' lawsuit is barred by the applicable statutes of limitations.

Plaintiffs are franchise owners of Hot 'n Now restaurants. Their claims against defendant Restaurant Properties, Inc. (RP), arose out of numerous separate agreements between the respective plaintiffs and RP for the establishment and management of Hot 'n Now restaurants located throughout Michigan and Indiana. Plaintiffs alleged in their complaint that RP committed various misdeeds, such as failing to provide adequate training, delaying site approval for new restaurants, and changing menu items in violation of the franchise agreements. Plaintiffs alleged breach of contract and other legal theories against RP. Plaintiffs also sued defendants Taco Bell Corporation and PepsiCo, Inc.,

corporate parents of RP,[1] alleging that both companies caused RP to change the original Hot 'n Now concept to the detriment of plaintiffs and other franchisees. Plaintiffs argued that Taco Bell and PepsiCo essentially turned the Hot 'n Now restaurants into a "laboratory experiment." Plaintiffs raised theories of tortious interference and "corporate usurpation" against Taco Bell and PepsiCo.

RP filed a motion for summary disposition under MCR 2.116(C)(7) (claim barred by statute of limitations), alleging, in part, that plaintiffs' claims were barred by the applicable statutes of limitations because, according to plaintiffs' admissions, they were aware of alleged contractual breaches in 1990 but did not file their lawsuit until March 2, 2000. RP argued that no continuing wrong or continuing services theory of recovery served to extend the periods of limitations. RP also moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted), arguing that various legal theories raised by plaintiffs were untenable. Taco Bell and PepsiCo also filed a motion for summary disposition under MCR 2.116(C)(8), arguing, among other things, that a parent corporation or an affiliate corporation cannot tortiously interfere with the contract of a subsidiary or affiliate corporation and that the legal theory of corporate usurpation is not recognized under Michigan law.

The trial court dismissed all plaintiffs' claims. It noted that an action for breach of contract must be brought within six years from the time the claim

---

[1] It appears from the record that either PepsiCo or its subsidiary, Taco Bell, acquired the Hot 'n Now chain in 1990.

accrues and that a tort action must be brought within three years of accrual of the claim. The court found that, on the basis of plaintiffs' admissions, plaintiffs' claims accrued shortly after PepsiCo or Taco Bell acquired RP in 1990—more than six years before plaintiffs filed their complaint. The court also found that each plaintiff signed a release as part of its franchise agreement that, if valid, would preclude future litigation against PepsiCo or Taco Bell. The court held that the releases were valid under MCL 566.1, even in the absence of consideration, and found that the releases barred all plaintiffs' claims.

Additionally, the trial court disagreed with plaintiffs' argument that the statutory periods of limitations were extended because the franchise agreements required the performance of continuous services. The court found that the continuing wrong or continuing services doctrines had not been extended to cover the applicable causes of action and that extending the doctrines in such a fashion would "[thwart] the intention of the Michigan Legislature as well as [subject] franchisors to similar suits after many years of continuous business dealings with a franchisee." The court found that, while the alleged breaches of contract and tortious conduct may have been continuous, plaintiffs' causes of action began accruing in 1990 and, because they did not bring their claims until well after the periods of limitations had expired, the claims were barred by law.

Plaintiffs argue that, because they were subject to a continuing wrong, the trial court erred in dismissing plaintiffs' claims against RP as untimely.

"We review a trial court's grant or denial of a motion for summary disposition pursuant to MCR

2.116(C)(7) de novo to determine whether the moving party was entitled to judgment as a matter of law." *DeCaminada v Coopers & Lybrand, LLP*, 232 Mich App 492, 496; 591 NW2d 364 (1998).[2] In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true the plaintiffs' well-pleaded allegations and construes them in the plaintiffs' favor. *Abbott v John E Green Co*, 233 Mich App 194, 198; 592 NW2d 96 (1998). This Court considers the pleadings, affidavits, depositions, admissions, and documentary evidence filed or submitted by the parties to determine whether the claim is barred by law. See MCR 2.116(G)(5) and *Employers Mut Cas Co v Petroleum Equip, Inc*, 190 Mich App 57, 62; 475 NW2d 418 (1991).

Under MCL 600.5807(8), an action to recover damages for breach of contract must be brought within six years of the time the claim first accrues.[3] Under MCL 600.5827,

> [e]xcept as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in [MCL 600.5829 to MCL 600.5838[4]], and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

Thus, this Court has generally held that a cause of action for breach of contract accrues when the

---

[2] Moreover, "[w]hether a cause of action is barred by the statute of limitations is a question of law that we also review de novo." *McKiney v Clayman*, 237 Mich App 198, 201; 602 NW2d 612 (1999).

[3] Certain specialized contracts have different limitations periods, see MCL 600.5807, but these periods are not applicable in the instant case.

[4] These provisions are not applicable here.

breach occurs, i.e., when the promisor fails to perform under the contract. See *H J Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 562; 595 NW2d 176 (1999), *Cordova Chem Co v Dep't of Natural Resources*, 212 Mich App 144, 153; 536 NW2d 860 (1995), and *Vandendries v Gen Motors Corp*, 130 Mich App 195, 201; 343 NW2d 4 (1983). Here, plaintiffs admit that RP failed to perform properly under the contract beginning in 1990, more than six years before plaintiffs filed their complaint. They contend, however, that the limitations period was extended by virtue of a continuing wrong.

Under the continuing wrong doctrine, "an alleged timely actionable event will allow consideration of and damages for connected conduct that would be otherwise barred." *Sumner v Goodyear Tire & Rubber Co*, 427 Mich 505, 510; 398 NW2d 368 (1986). Thus, in certain cases, the doctrine recognizes that " '[w]here a defendant's wrongful acts are of a continuing nature, the period of limitation will not run until the wrong is abated; therefore, a separate cause of action can accrue each day that defendant's tortious conduct continues.' " *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 81; 592 NW2d 112 (1999), quoting *Horvath v Delida*, 213 Mich App 620, 626; 540 NW2d 760 (1995). In order to recover under this doctrine, the plaintiff must establish a "continuing wrong" by showing "continual tortious *acts*, not by continual harmful effects from an original completed act." *Id.* at 627 (emphasis in original).

Plaintiffs contend that the continuing wrong theory applies to the instant case because breaches occurred continually during the period that PepsiCo or Taco

Bell had control of the Hot 'n Now concept. However, as noted by the trial court, this doctrine has thus far been given only limited application. *Id.* The doctrine has historically been applied to cases of trespass. See *Defnet v Detroit*, 327 Mich 254, 258; 41 NW2d 539 (1950). In *Sumner, supra* at 510, the Supreme Court extended the doctrine to cases involving civil rights claims, and this Court extended the doctrine to claims of nuisance in *Moore v City of Pontiac*, 143 Mich App 610, 614; 372 NW2d 627 (1985). Subsequently, this Court refused to extend the doctrine to cases involving products liability actions seeking damages for personal injury, see *Asher v Exxon Co, USA*, 200 Mich App 635, 639-641; 504 NW2d 728 (1993), and in *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 341; 568 NW2d 847 (1997), the Court declined to extend the doctrine to negligence claims.

Plaintiffs contend that the continuing wrong theory has been extended to claims of breach of contract by virtue of *H J Tucker, supra* at 562-563. We disagree that *H J Tucker* involved the continuing wrong doctrine. In *H J Tucker*, the defendant argued that the trial court erred in failing to find that the plaintiff's entire claim of breach of contract (for nonpayment of commissions) was barred by the statute of limitations. *Id.* at 562. The Court deemed the damages sought in *H J Tucker* as analogous to claims for payments under an installment contract. *Id.* The Court noted that "the commissions earned by plaintiff were separately computed, were to be paid monthly, and were of a periodic nature." *Id.* at 563. It further noted that " 'every periodic payment made that is alleged to be less than the amount due . . . constitutes a continu-

ing breach of contract and the limitation period runs from the due date of each payment.' " *Id.*, quoting *Harris v City of Allen Park*, 193 Mich App 103, 107; 483 NW2d 434 (1992). See also MCL 600.5836 ("[t]he claims on an installment contract accrue as each installment falls due"). The Court held that the trial court correctly divided the sales commissions due the plaintiff into two categories. *H J Tucker, supra* at 563. The plaintiff was not entitled to sue for unpaid commissions that accrued more than six years before the time the plaintiff filed its complaint, but it was entitled to seek reimbursements for commissions that fell within the six-year limitations period. *Id.*

Plaintiffs contend that *H J Tucker* is analogous to the instant case and indicates that the continuing wrong doctrine has been extended to situations involving breaches of contract. However, *H J Tucker* is *not* a continuing wrong case, despite the Court's use of the phrase "continuing breach of contract." See *id.* Indeed, under the continuing wrong theory, wrongs occurring within the limitations period essentially "save" the earlier wrongs that occurred outside the period. The *Sumner* Court noted that

> once jurisdiction is attained through the continuing viola-
> tions doctrine, the remedy should be designed to make the
> plaintiff whole for the entire injury he has suffered. This
> has been the view of the great majority of the federal
> courts. See, e.g., *Thompson v Sawyer*, 219 US App DC 393;
> 678 F2d 257 (1982); *McKenzie v Sawyer*, 221 US App DC
> 288, 298; 684 F2d 62 (1982) [questioned in part on other
> grounds by *Berger v Iron Workers Reinforced Rodmen,
> Local 201*, 335 US App DC 179; 170 F3d 1111 (1999)] ("Once
> having shown discrimination continuing into the actionable
> period, . . . the plaintiffs may also recover for portions of
> the persistent process of illegal discrimination that ante-

dated the limitations period"); *Tarvesian v Carr Div of TRW, Inc*, 407 F Supp 336, 339 (D Mass, 1976) ("If plaintiff can prove . . . an integrated pattern of discrimination, the defendants become liable for the whole of it")[.] [*Sumner, supra* at 542 n 15.]

See also *Meek v Michigan Bell Tele Co*, 193 Mich App 340, 345; 483 NW2d 407 (1992). In contrast to this theory, the *H J Tucker* Court made clear that each improper payment at issue in *H J Tucker* constituted a separate breach that was *not* tied to earlier breaches falling outside the limitations period. *H J Tucker, supra* at 562-563. The Court essentially found that there were repeated breaches that gave rise to separate claims of breach of contract, each of which arose, accrued, and became extinguished separately. *Id.* The plaintiff could recover only for those breaches occurring within the limitations period. *Id.* at 563. Accordingly, *H J Tucker* is not pertinent to plaintiffs' primary argument, i.e., that the continuing wrong theory served to extend the period of limitations in the instant case.[5]

Plaintiffs also cite *Hanover Ins Co v Eleven & One-Half Mile Drainage Dist*, 52 Mich App 658; 218 NW2d 109 (1974), a case involving continuing services, in their attempt to show that the Court has applied a doctrine similar to the continuing wrong doctrine to some contracts. Plaintiffs contend that the instant case is analogous to *Hanover* and thus falls within a

---

[5] Although panels of this Court have held that, "[w]here the continuing-wrongful-acts doctrine applies, the damages recoverable are limited to those occurring within the applicable limitation period and, where appropriate, after the filing of the complaint," see *Horvath, supra at* 627; see also *Slayton v Michigan Host, Inc*, 144 Mich App 535, 556; 376 NW2d 664 (1985), this is not compatible with the Supreme Court's decision in *Sumner*. See *Sumner, supra* at 542 n 15; see also *Meek, supra* at 345.

continuing services theory of recovery. In *Hanover*, the plaintiff, a financial institution, sought to recover for extra costs the contractor incurred as a result of a previously undisclosed problem with the subsurface conditions that appeared during the construction of the defendants' drainage system. *Id.* at 660. The defendants raised the statute of limitations to bar recovery on the theory that the breach occurred, and the six-year period of limitations began running, when the contractor discovered the problem with the subsurface conditions. *Id.* at 661. This Court disagreed and held that the wrong on which the plaintiff's claim was based was committed when the defendants, over two years later, failed to compensate for the extra costs incurred. *Id.* at 661-662. The Court relied on previous Michigan case law holding that, if the transaction is an entirety and requires the performance of a continuous service, the action is not barred until six years after the conclusion of the service. *Id.* at 662, citing *Carter v Carter*, 36 Mich 207 (1877), *Burch v Woodworth*, 68 Mich 519; 36 NW 721 (1888), and *Wisniewski v Wisniewski's Estate*, 254 Mich 663; 236 NW 899 (1931).

However, plaintiffs in the instant case are not in the same position as the contractor in *Hanover*, the caregiver in *Wisniewski*, the log cutter in *Burch*, or the housekeeper in *Carter*. *Hanover*, *supra* at 660; *Wisniewski*, *supra* at 664; *Burch*, *supra* at 519; *Carter*, *supra* at 207. Those cases involved plaintiffs who provided personal services and who continued performance notwithstanding the failure of the breaching party to compensate them for their services; the courts concluded that the claims did not accrue until after the conclusion of the services and

the final refusal of the breaching parties to pay for the services. *Hanover, supra* at 660-662; *Wisniewski, supra* at 664; *Burch, supra* at 522; *Carter, supra* at 207-208. Here, plaintiffs are seeking recovery for a contractual breach based on the lack of services performed by another. *Hanover* and the cases cited therein are simply not analogous to the instant case.

Plaintiffs have identified no cases extending the continuing wrong or continuing services theories to a situation in which a party to a contract fails to perform adequately under the contract. Given the clear inapplicability of the continuing services doctrine to the instant case and given the generally limited nature of the continuing wrong doctrine,[6] we decline to extend either doctrine to plaintiffs' situation.

It is possible that some recovery would be appropriate in the instant case under the reasoning of *H J Tucker, supra* at 562-563.[7] In a reply brief, plaintiffs state, in one sentence, that "at worst, only Plaintiffs' claims arising out of breaches which occurred prior to March 1, 1994, would be time barred." We decline to reach this issue, however, for three reasons. First,

---

[6] As stated in *Proctor & Schwartz, Inc v United States Equip Co*, 624 F2d 771, 773 n 3 (CA 6, 1980), "Michigan courts have found certain acts, such as trespass and nuisance, were continuing wrongs, but we find no authority for treating a breach of contract in the same manner."

[7] When one party to a contract materially breaches the contract by failing to perform duties under it, the other party can either consider the contract terminated and sue for total breach, or he can continue his performance and sue for partial breach. See, generally, *Schnepf v Thomas L McNamara, Inc*, 354 Mich 393, 397; 93 NW2d 230 (1958), *Arnone v Chrysler Corp*, 6 Mich App 224, 228; 148 NW2d 902 (1967), and 2 Restatement Contracts, 2d (1981), § 236, comment b, p 214. Thus, when one elects to continue performance and a second breach occurs, it should give rise to a separate claim for specific damages arising from the second breach, whether or not the contract is deemed an installment contract. See, e.g., *H J Tucker, supra* at 576 (MARKMAN, J., concurring).

plaintiffs have waived the issue by giving it such cursory treatment. See *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984), *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996), and *Mann v Mann*, 190 Mich App 526, 536-537; 476 NW2d 439 (1991). Second, plaintiffs did not argue below for the possibility of such a "bifurcation." Instead, they maintained that all the claims accrued after the conclusion of the contractual arrangement. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Living Alternatives for the Developmentally Disabled, Inc v Dep't of Mental Health*, 207 Mich App 482, 484; 525 NW2d 466 (1994). Finally, because the "bifurcation" claim is first raised in plaintiffs' reply brief, it is untimely. Reply briefs may contain only rebuttal argument, and raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal. MCR 7.212(G); *Check Reporting Services, Inc v Michigan Nat'l Bank-Lansing*, 191 Mich App 614, 628; 478 NW2d 893 (1991).

The trial court did not err in concluding that plaintiffs' claims against RP were barred by the statute of limitations.[8]

---

[8] The trial court's opinion indicates that all plaintiffs' claims against RP were barred by the statutes of limitations and were not saved by the continuing wrong or continuing service doctrines. On appeal, plaintiffs focus on the allegations of breach of contract against RP, arguing that these allegations were saved by the doctrines in question. Because of inadequate briefing, plaintiffs have waived any contention that the additional claims against RP should survive. See, generally, *Goolsby, supra* at 655 n 1 (discussing inadequate briefing). Moreover, because plaintiffs' claims of corporate usurpation against Taco Bell and PepsiCo are merely derivative of their claims against RP (plaintiffs argue, in this count of the complaint,

In its opinion, the trial court dismissed the claims against Taco Bell and PepsiCo simultaneously with the dismissal of the claims against RP. The court concluded that *all* plaintiffs' claims were banned because of, among other things, the applicable statutes of limitations. Evidently recognizing the interrelatedness of plaintiffs' claims, the court reached this conclusion even though Taco Bell and PepsiCo did not specifically raise a statute of limitations defense in their motion for summary disposition.[9] Although plaintiffs point out this fact on appeal—stating that "[n]either PepsiCo nor Taco Bell raised the statute of limitations as a defense to their claims, although this appears to be the Court's basis for disposition of these claims"— plaintiffs make no reasoned argument that the court was not empowered to make such a ruling. Accordingly, any argument in this regard has been waived because of inadequate briefing. See *Goolsby, supra* at 655 n 1.

Instead, plaintiffs argue that their claims against Taco Bell and PepsiCo survive a summary disposition challenge because of the continuing wrong theory. We disagree. As noted by the trial court, plaintiffs' claims against Taco Bell and PepsiCo of tortious interference with a contract and tortious interference with a prospective economic advantage[10] were governed by a three-year period of limitations. See MCL 600.5805(10), and *James v Logee*, 150 Mich App 35,

---

that Taco Bell and PepsiCo were "alter egos" of RP), the claims of corporate usurpation cannot survive.

[9] Taco Bell and PepsiCo did raise a statute of limitations defense in their list of affirmative defenses.

[10] As noted in footnote 8, *supra*, the claim of corporate usurpation cannot survive.

37-38; 388 NW2d 294 (1986). Limitations periods in tort actions begin to run at the time all elements, including damages, can be alleged in a proper complaint. MCL 600.5827; *Stephens v Dixon,* 449 Mich 531, 534-535; 536 NW2d 755 (1995); *Travelers Ins Co v Guardian Alarm Co of Michigan,* 231 Mich App 473, 479; 586 NW2d 760 (1998). Thus, a claim of tortious interference with a contract or a prospective economic advantage is complete upon a showing of the existence of a valid business relationship or the expectation of such a relationship between the plaintiff and some third party, knowledge of the relationship or expectation of the relationship by the defendant, and an intentional interference causing termination of the relationship or expectation, resulting in damages to the plaintiff. *BPS Clinical Laboratories v Blue Cross & Blue Shield of Michigan (On Remand),* 217 Mich App 687, 699; 552 NW2d 919 (1996); *Winiemko v Valenti,* 203 Mich App 411, 416; 513 NW2d 181 (1994).

As noted earlier, under the continuing wrong theory, continuing wrongful acts occurring within a statutory limitations period can extend a plaintiff's recovery to encompass acts occurring outside the period. See *Oakwood Homeowners Ass'n, Inc v Ford Motor Co,* 77 Mich App 197, 220 n 7; 258 NW2d 475 (1977). However, as also noted earlier, this doctrine has been given only limited application to trespass, nuisance, and civil rights cases. *Horvath, supra* at 627; *Traver Lakes, supra* at 341; *Asher, supra* at 639-640. Defendants have failed to cite any authority to support an extension of the doctrine to claims of tortious interference.

Moreover, the decision in *Lucy v Amoco Oil Co*, 582 F Supp 1168 (ED Mich, 1984), provides a persuasive discussion concerning the doctrine in the context of claims of tortious interference. In that case, an action was brought against a franchisor for tortious interference with a prospective business advantage. *Id.* at 1169. The district court held that the plaintiff's cause of action was time-barred, rejecting the claim that the damages arose from a continuous tort. *Id.* at 1173-1174. The court, noting that the plaintiff was actually describing a series of discrete events, held that the fact that the defendant may have had an underlying motivation to interfere with plaintiff's business was not enough to preclude operation of the statute of limitations regarding those actions that occurred outside the limitations period. *Id.* at 1173. The court stated:

> Any overt conduct on the part of defendant which gave rise to a cause of action for tortious interference with prospective business advantage that occurred prior to September 27, 1979, is barred by operation of the statute of limitations. The fact that such conduct may have been motivated by policies or prejudices which continued to exist subsequent to that date, which policies may have motivated similar conduct within the statutory period for bringing claims, does not prevent application of the statute to the earlier claims. The pleading of an ongoing conspiracy is not necessary to the statement of a cause of action for tortious interference with prospective business advantage. The tort is complete upon a showing of the existence of a valid business relationship or the expectation of such a relationship between the plaintiff and some third party, knowledge of the relationship or expectation of the relationship by the defendant, and an intentional interference causing termination of the relationship or expectation which results in damages to the plaintiff[.] *Meyer v. Hubbell*, 117 Mich. App. 699, 324 N.W.2d 139 (1982). The cause of action accrues and the

statute of limitations begins to run upon the simultaneous occurrence of each of the elements of the tort.

Consequently, plaintiffs' allegations that Amoco engaged in conduct within the period of limitations which interfered with Ray Lucy's prospective business advantage does not serve to permit the cause of action which may have accrued within the period of limitations to "relate back" to conduct which occurred outside of the period of limitations. [*Lucy*, *supra* at 1173-1174.]

Given the limited application of the continuing wrong doctrine in our case law and the persuasive reasoning in *Lucy*, we decline to extend the doctrine to plaintiffs' claims of tortious interference. Appellate relief is unwarranted. In light of our rulings, we need not address the additional arguments raised by the parties on appeal.

Affirmed.