# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA MERCHAND,

  Plaintiff-Appellant/Cross-Appellee,

v

RICHARD L. CARPENTER, M.D.,

  Defendant-Appellee/Cross-
  Appellant,

and

MID-MICHIGAN EAR, NOSE, AND THROAT,
PC,

  Defendant.

UNPUBLISHED
November 15, 2018

No. 327272
Ingham Circuit Court
LC No. 12-001343-NH

ON REMAND

Before: BORRELLO, P.J., and O'BRIEN and TUKEL, JJ.

PER CURIAM.

This medical malpractice action returns to this Court on remand from our Supreme Court. Plaintiff appeals as of right from a judgment of no cause of action in defendant's favor, entered following a jury trial. Previously, in a 2-1 decision, we reversed and remanded for a new trial. *Merchand v Carpenter*, unpublished per curiam opinion of the Court of Appeals, issued August 2, 2016 (Docket No. 327272), p 9.[1]  On May 16, 2018, our Supreme Court reversed that judgment and remanded the case to this Court "for consideration of the other evidentiary challenges raised by plaintiff but not addressed" in our prior opinion. *Merchand v Carpenter*, 501 Mich 1071, 1072; 911 NW2d 198 (2018).  For the reasons set forth in this opinion, we affirm.

---

[1] Judge O'BRIEN dissented. *Merchand v Carpenter*, unpublished per curiam opinion of the Court of Appeals, issued August 2, 2016 (Docket No. 327272) (O'BRIEN, J., dissenting).

## I. BACKGROUND

As we noted in our previous opinion, this case arises from plaintiff's claim that she suffered a permanent injury to her right hypoglossal nerve (HGN)[2] during defendant's[3] surgical removal of plaintiff's right submandibular gland in August 2010. *Merchand*, unpub op at 1-2. As we previously explained:

> Plaintiff suffered from sialadenitis, a salivary gland infection. Defendant, a board-certified otolaryngologist (an ear, nose, and throat doctor), used a harmonic scalpel, a surgical instrument that uses ultrasonic vibrations to simultaneously cut and cauterize tissue, to remove a stone from plaintiff's right salivary gland and a portion of the gland. According to defendant's records, the surgery lasted 23 minutes, there were no complications, and plaintiff's anatomy presented no anomalies. The pathology report on the excised portion of gland notes that the gland was inflamed, but was without infection.
>
> Immediately after the anesthesia from the surgery wore off, plaintiff noticed that her tongue felt thick, that she was biting it all the time, and that a lot of saliva was coming from the right side of her mouth. She testified at trial that, prior to the surgery, she had experienced no problems with her tongue, with biting her tongue, or with saliva or spit coming from her mouth. Plaintiff and members of her family testified that, in the days and months following the surgery, plaintiff experienced tongue biting, difficulty swallowing and chewing, impaired speech, and spitting when talking. Plaintiff's daughter testified that plaintiff talked through "gritted teeth" in an effort not to bite her tongue, and would frequently exclaim "ow," and grab the side of her face.
>
> Plaintiff testified at trial that she repeatedly told defendant about her tongue-biting and drooling symptoms at several follow-up visits over the next nine months, but defendant did not record her complaints in her medical record. Defendant's record of plaintiff's treatment charts some swelling and drainage, notes that defendant drained and cauterized plaintiff's incision and prescribed antibiotics, and states that plaintiff's incision is "healing nicely" and "doing well." Defendant testified that it was possible, but unlikely, that plaintiff informed him of postoperative complications. Plaintiff's last appointment with defendant was in March 2011.

---

[2] "The HGN is the 12th cranial nerve and controls movement of the tongue. There is a right and a left HGN, which provide motor activity to the right and left sides of the tongue." *Merchand*, unpub op at 1 n 1.

[3] Mid-Michigan Ear, Nose, and Throat, P.C, was dismissed with prejudice from this lawsuit by stipulation of the parties before trial. *Merchand*, unpub op at 1 n 2.

In April 2012, plaintiff noticed that her tongue was deviating and that there were deep impressions in it. She contacted her primary care physician, who, after reviewing plaintiff's medical record and the results of an MRI, confirmed denervation of the right side of plaintiff's tongue. The physician referred plaintiff to an expert in neurology, who concluded that plaintiff's symptoms were consistent with an injury to plaintiff's HGN in August 2010.

At trial, Dr. Michael Morris, plaintiff's standard of care expert witness, explained that, in order to remove the submandibular gland, the surgeon makes an incision approximately four centimeters below the patient's jawbone, cutting through the skin, subcutaneous tissue, and muscle until reaching the connective tissue and obtaining a visual of the submandibular gland. As the surgeon elevates the submandibular gland, the muscles under the gland become visible. In those muscles are the HGN and the lingual nerve, nerves that supply the tongue with sensation and activity. Dr. Morris said that, when removing the submandibular gland, a surgeon has to identify those nerves to ensure preserving them. He opined that defendant breached the standard of care by failing to identify the HGN and by using the harmonic scalpel to separate the gland from the tissue in a way that brought the vibrating scalpel too close to the HGN.

Dr. Steven Schechter, a board-certified neurologist and clinical neurophysiologist testified to a reasonable degree of medical certainty that, based on the absence of symptoms prior to surgery, and the progression of symptoms following the surgery, plaintiff's nerve injury resulted from something that occurred during surgery. He explained that an injury to the HGN during surgery would not result in immediate, total paralysis of the tongue, and that deficits in motor function would take months and years to develop. Dr. Schechter testified that the worsening of plaintiff's symptoms over time as reflected in the medical records was typical of an injury to the right HGN that occurred at the time of surgery.

Drs. Eugene Rontal and Henry Borovik, both board-certified ontolaryngologists, testified as expert witnesses on defendant's behalf. Both concluded that defendant did not injure plaintiff's HGN, reasoning that an injury to plaintiff's HGN during the August 2010 surgery would have produced immediate effects. Dr. Rontal said that the tongue deviation would have happened immediately and been obvious, and the tongue fasciculation, i.e., muscle twitching, that plaintiff currently experiences would have developed within three to four months of the injury. In like fashion, Dr. Borovik testified that, if defendant had injured plaintiff's HGN, there would have been an immediate loss of motor function.

After just over four hours of deliberation, the jury found defendant not professionally negligent by a vote of 6 to 2. After further proceedings not relevant to the instant appeal, the trial court entered a judgment of no cause of action in favor of defendant on April 21, 2015. [*Id*. at 1-3.]

Plaintiff appealed to this Court. *Id*. at 3. On appeal, this Court first concluded that pursuant to MRE 608(b), the trial court did not abuse its discretion by prohibiting plaintiff from cross-examining defendant about prior instances when he had been sued for medical malpractice. *Id*. at 3-4. Next, we concluded that the trial court abused its discretion by prohibiting plaintiff from admitting Morris's testimony about the parallels between defendant's record keeping in the instant case and past medical malpractice cases where patients had serious post-operative complaints. *Id*. at 4-5. We determined that this evidence was admissible under MRE 404(b)(1) for the non-character purpose of demonstrating defendant's scheme, plan, or system of creating medical records that were not accurate reflections of his interactions with patients when serious complications arose from surgeries he performed. *Id*. at 4-6. On this basis, we vacated the jury's verdict and remanded the matter for a new trial. *Id*. at 6. We further concluded that, in light of this conclusion, it was unnecessary to address the remaining issues raised by plaintiff. *Id*.[4]

Our Supreme Court, after hearing oral argument on the application for leave to appeal this Court's judgment, reversed the judgment in lieu of granting leave to appeal. *Merchand*, 501 Mich at 1071-1072. Our Supreme Court reasoned that plaintiff had never argued in the trial court that a proper purpose existed under MRE 404(b) to admit the testimony regarding parallels between defendant's recordkeeping practices in this case and past medical malpractice cases. *Id*. at 1072. Hence, our Supreme Court explained that "[b]ecause plaintiff here failed to make a cognizable argument under MRE 404(b) before the trial court, any failure to admit this evidence on that basis would not amount to an abuse of discretion." *Id*. This Court was instructed on remand to consider "the other evidentiary challenges raised by plaintiff but not previously addressed." *Id*.

## II. ANALYSIS

Our task in this matter is to strictly comply with the remand order of our Supreme Court. *Int'l Business Machines, Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) ("When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order.") (quotation marks and citation omitted). "Issues relating to the admission of evidence are reviewed for an abuse of discretion." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). A trial court's decision constitutes an abuse of discretion if it is "outside the range of reasonable and principled outcomes." *Id*.

In this case, the only evidentiary challenge raised by plaintiff that we did not address in our previous opinion is plaintiff's argument that the trial court erred by precluding evidence, in the form of testimony by defendant's former partners at Mid-Michigan Ear, Nose, and Throat,

---

[4] In our prior opinion, we also addressed the issues raised by defendant on cross appeal. However, we need not discuss those issues at this juncture because they are not implicated by our Supreme Court's remand order instructing us to consider "the other evidentiary challenges raised by plaintiff but not previously addressed." *Merchand*, 501 Mich at 1072.

P.C (MMENT), regarding the reasons for defendant's termination from MMENT.[5]  Plaintiff argues on appeal that this evidence was admissible under MRE 608(b), which provides in pertinent part as follows:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. . . .

It is clear from plaintiff's appellate argument and an examination of the corresponding portion of the trial court record cited by plaintiff on appeal that plaintiff's appellate argument focuses solely on whether *extrinsic evidence* of specific instances of conduct—i.e., the testimony of defendant's former partners about the circumstances of his termination from MMENT—was admissible at trial.  However, such evidence, which does not involve the "conviction of crime as provided in Rule 609," is precluded under the plain language of MRE 608(b).  As a consequence, plaintiff has not demonstrated on appeal that there existed a basis on which the trial court could have admitted the evidence.  As a consequence, plaintiff has not demonstrated that the trial court abused its discretion by ruling that this evidence was inadmissible.[6]

---

[5] To the extent plaintiff potentially raises additional issues in her reply brief on appeal, these issues are not properly presented for appellate review and we need not consider them.  "Reply briefs may contain only rebuttal argument, and raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal."  *Blazer Foods, Inc v Restaurant Properties, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003); see also MCR 7.212(G).

Finally, any remaining arguments made by plaintiff were not raised by plaintiff as appellant in plaintiff's principal brief on appeal but were instead made in response to arguments raised by defendant in defendant's role as cross appellant.  These issues were not included in plaintiff's statement of questions presented in her principal brief on appeal.  Therefore, these remaining arguments of plaintiff's are not properly before this Court on remand, where we have been instructed by our Supreme Court to consider only those evidentiary issues raised by plaintiff but not previously addressed.  See *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001) (stating that an issue not presented in the appellant's statement of questions presented need not be reviewed by an appellate court because "[i]ndependent issues not raised in the statement of questions presented are not properly presented for appellate review"); *Int'l Business Machines*, 316 Mich App at 350.

[6] To the extent plaintiff refers to defendant's "repeated instances of perjury, dishonesty, and fraud" that were also (according to plaintiff) admissible under MRE 608(b), plaintiff has not clearly explained the nature of this supposed evidence.  Therefore, any argument in this regard is abandoned. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("It is not sufficient for

Affirmed.

                                        /s/ Stephen L. Borrello
                                        /s/ Colleen A. O'Brien
                                        /s/ Jonathan Tukel

---

a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (Quotation marks and citation omitted). Moreover, to the extent plaintiff has attempted to describe this evidence, it is also clear that plaintiff has asserted that she should have been able to have such evidence admitted in the form of extrinsic evidence and, as we have already stated, such evidence would not be admissible under MRE 608(b).