*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATHFIELD HOLDINGS LLC, LATHFIELD
PARTNERS LLC, and LATHFIELD
INVESTMENTS LLC,

Plaintiffs-Appellants,

v

DAHL REAL ESTATE LLC, AJBINDER KAUR
DHALIWAL, and JITENDRA SINGH
DHALIWAL,

Defendants-Appellees.

UNPUBLISHED
September 21, 2023

No. 363502
Wayne Circuit Court
LC No. 20-016190-CB

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs, Lathfield Holdings LLC ("LHLLC"), Lathfield Partners LLC ("LPLLC"), and Lathfield Investments LLC ("LILLC"), appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendants Dahl Real Estate LLC ("Dahl"), Ajbinder Kaur Dhaliwal, and Jitendra Singh Dhawliwal ("Jet"). Plaintiffs also challenge the trial court's order setting aside defendants' acceptance of case evaluation. Because we conclude the trial court erred when it granted summary disposition on the issue of whether defendants breached the sale agreements and whether plaintiffs waived such breach, we reverse and remand for further proceedings on that claim. In all other respects, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Jet and Ajbinder are the sole members of Dahl. In October 2019, Dahl entered into sale agreements (the "Agreements") with Michigan Asset Holdings, LLC ("MAH") for the sale of three properties in Lathrup Village, Michigan (the "City"). Jason Curis, the manager of MAH, is also the manager of LHLLC, LPLLC, and LILLC, respectively. One month after entering into the Agreements, MAH transferred its rights under the Agreements to plaintiffs.

In late January 2020, Jet received an e-mail from the City with an attached letter stating the properties had building, fire, zoning and code enforcement issues, and that a full site-plan

-1-

review was necessary. Jet forwarded the e-mail to Curis the same day. Despite the City's letter and defendants' attempts to postpone closing, the parties closed on the sale of the properties less than a week after receiving the letter. Shortly thereafter, plaintiffs notified the City they purchased the properties, prompting the City to demand inspections of the properties. When the City discovered the properties had numerous issues, the City threatened to condemn the properties and demanded plaintiffs cure the problems. Plaintiffs then investigated the properties' records and claimed to discover that defendants "had been issued numerous citations for City ordinance violations," and received extensive communications from the City regarding these issues between May 2015 and December 2017.

Plaintiffs subsequently filed a complaint alleging, in relevant part, fraud, fraudulent misrepresentation, innocent misrepresentation, and negligent misrepresentation against defendants, and breach of contract, and innocent misrepresentation against Dahl only. After discovery, the parties filed cross motions for summary disposition under MCR 2.116(C)(10). Plaintiffs also moved for entry of judgment against defendants under MCR 2.403(M) for a case evaluation award issued in December 2021 in favor of LPLLC, which defendants opposed and moved to set aside.

The trial court granted summary disposition in favor of defendants, concluding plaintiffs could not maintain their breach-of-contract and fraud claims because there was no genuine issue of material fact that defendants "made no fraudulent representation prior to signing the agreement," and because plaintiffs were made "aware of problems before closing." The trial court also concluded plaintiffs were not entitled to summary disposition because they reasonably should have discovered the issues with the properties during the 60-day inspection period before closing. Plaintiffs moved for reconsideration, which the trial court denied. The trial court also granted defendants' motion to set aside the case evaluation award in favor of LPLLC. This appeal followed.

## II. MOTION TO SET ASIDE

Plaintiffs argue the trial court abused its discretion by granting defendants' motion to set aside the case evaluation because defendants did not demonstrate that setting it aside would cause substantial injustice. We disagree.

## A. STANDARDS OF REVIEW

We review a trial court's decision to set aside an acceptance of a case evaluation for an abuse of discretion. *Great American Ins Co v Old Republic Ins Co*, 180 Mich App 508, 510; 448 NW2d 493 (1989).[1] "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 24; 930 NW2d 393 (2018) (quotation marks and citation omitted). The interpretation and

_____

[1] Although cases decided before 1990 are not binding, we may consider them for their persuasive value. See MCR 7.215(J)(1).

application of the court rules is reviewed de novo. *Duckett v Solky*, 341 Mich App 706, 720; 991 NW2d 852 (2022).

## B. ANALYSIS

Once a case has been submitted for case evaluation, MCR 2.403(L) governs the parties' acceptance and rejection of a panel's evaluation award:

(1) Each party shall file a written acceptance or rejection of the panel's evaluation with the ADR clerk within 28 days after service of the panel's evaluation. Even if there are separate awards on multiple claims, the party must either accept or reject the evaluation in its entirety as to a particular opposing party. The failure to file a written acceptance or rejection within 28 days constitutes rejection.

(2) There may be no disclosure of a party's acceptance or rejection of the panel's evaluation until the expiration of the 28-day period, at which time the ADR clerk shall send a notice indicating each party's acceptance or rejection of the panel's evaluation.

(3) In case evaluations involving multiple parties the following rules apply:

(a) Each party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others. However, as to any particular opposing party, the party must either accept or reject the evaluation in its entirety.

(b) A party who accepts all of the awards may specifically indicate that he or she intends the acceptance to be effective only if

(*i*) all opposing parties accept, and/or

(*ii*) the opposing parties accept as to specified coparties.

If such a limitation is not included in the acceptance, an accepting party is deemed to have agreed to entry of judgment, or dismissal as provided in subrule (M)(1), as to that party and those of the opposing parties who accept, with the action to continue between the accepting party and those opposing parties who reject. [MCR 2.403(L).]

In *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 556; 640 NW2d 256 (2002), the Michigan Supreme Court held an "entry of a judgment pursuant to the acceptance of a mediation evaluation is, in essence, a consent judgment." The holding in *CAM Constr* does not, however, preclude a party from filing a motion to set aside a case evaluation award even when both parties accept case evaluation. *Goch Props, LLC v C Van Boxell Transp, Inc*, 477 Mich 871; 721 NW2d 581 (2006). Generally, a court should set aside an acceptance of a case evaluation only if failure to do so would result in "substantial injustice." *State Farm Mut Auto Ins Co v Galen*, 199 Mich App 274, 277; 500 NW2d 769 (1993); see also *Yee v Shiawassee County Bd of Comm'rs*,

251 Mich App 379, 403; 651 NW2d 756 (2002). A unilateral mistake that would result in an "unconscionable advantage" or "substantial injustice" is sufficient to set aside a case evaluation. See *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008).

In their motion to set aside acceptance of case evaluation, defendants averred they intended to only accept awards for nominal damages against Jet and Ajbinder but also mistakenly accepted the $50,000 award against Dahl. Immediately after discovering the error, defendants contacted the trial court and plaintiffs to inform them of it, and the trial court instructed defendants to file a motion to set aside their acceptance. Plaintiffs' counsel assured defendants' counsel they would not "jam [them] up on this." Defendants claimed they failed to timely move to set aside their acceptance of the case evaluation award due in part to counsel receiving large amounts of additional discovery from plaintiffs in their related, but separate, federal case. The parties did not address the case evaluation award acceptance until plaintiffs requested entry of judgment against defendants under MCR 2.403(M) for the case evaluation award issued in favor of LPLLC.

Defendants undoubtedly made an error by failing to timely move to set aside their mistaken acceptance of the case evaluation award. However, defendants immediately took steps to correct their mistake and delayed their motion in partial reliance on plaintiffs' representations they would not make an issue out of it. Seemingly in line with their representations to defendants, plaintiffs did not request entry of judgment against Dahl until almost three months later, when they moved for summary disposition. Although defendants failed to timely correct their error, plaintiffs moved for entry of a judgment they knew defendants never intended to accept. Thus, because defendants' unilateral mistake would result in an unconscionable advantage for plaintiff, the trial court did not abuse its discretion by granting defendants' motion to set aside case evaluation.

### III. SUMMARY DISPOSITION

Plaintiffs also argue the trial court erred when it granted summary disposition in defendants' favor because there was no genuine issue of material fact that defendants breached the terms of the Agreements and misrepresented the condition of the properties. Although we disagree that the trial court erred when it dismissed plaintiffs' fraud claims, we agree with plaintiffs that the trial court erred when it dismissed their breach-of-contract claim.

### A. STANDARDS OF REVIEW

We review de novo a trial court's decision concerning a motion for summary disposition under MCR 2.116(C)(10). *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is properly granted when the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015).

> [W]hen reviewing a motion for summary disposition brought under MCR 2.116(C)(10), the court must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. If the court does determine that a genuine issue of material fact exists, then the motion must be denied and the issues

are left to a fact-finder to resolve at a trial. [*Dextrom v Wexford Co*, 287 Mich App 406, 439; 789 NW2d 211 (2010).]

The proper interpretation of a contract is a question of law that this Court also reviews de novo. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). In interpreting a contract, this Court's obligation is to determine the intent of the parties. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). This Court must examine the language of the contract and accord the words their ordinary and plain meanings, if such meanings are apparent. *Wilkie*, 469 Mich at 47. If the contractual language is unambiguous, courts must interpret and enforce the contract as written. *Quality Prod*, 469 Mich at 375.

## B. ANALYSIS

### 1. FRAUD

We note plaintiffs asserted claims for breach of contract, fraudulent misrepresentation, negligent misrepresentation, and innocent misrepresentation against defendants. Plaintiffs allege defendants breached the Agreements because they made false representations regarding the condition of the properties. Similarly, plaintiffs allege defendants are liable under various theories of fraud because they knowingly, or with reckless disregard for their truth, made false representations regarding the properties' condition in the Agreements. However, "[a] plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 401; 729 NW2d 277 (2006) (footnotes omitted).

Plaintiffs assert defendants "had a duty separate and distinct from the Agreement[s] to provide truthful and honest information to Plaintiffs," but immediately cite to the representations made in the Agreements to support the contention. Because plaintiffs' fraud claims were not made on the basis of a separate and distinct duty from those imposed by the Agreements, they are not actionable. *Casey*, 273 Mich App at 401; see also *Huron Tool & Engineering Co v Precision Consulting Servs, Inc*, 209 Mich App 365, 373; 532 NW2d 541 (1995) (explaining that claims of fraud that are "interwoven" with breach of contract "relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort."). Although the trial court did not grant summary disposition on these grounds, "this Court will affirm where the trial court came to the right result even if for the wrong reason." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007). Therefore, we affirm the trial court's order granting summary disposition as to plaintiffs' fraud claims.

### 2. BREACH OF CONTRACT

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014) (footnote omitted). If a party commits a material breach of a contract and does not indicate an intention to repudiate the remainder of the contract, the injured party must choose to either continue performance or cease performance and seek damages. See *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 521 n 7; 673 NW2d 805 (2003). Consequently, any

act by the injured party that indicates an intent to continue will operate as a conclusive election to waive the breach. *Schnepf v Thomas L McNamara Inc*, 354 Mich 393, 397; 93 NW2d 230 (1958).

"[A] waiver is a voluntary and intentional abandonment of a known right." *Quality Prod*, 469 Mich at 374. "[A] valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose, or be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018) (quotation marks and citations omitted). " 'As is' clauses allocate the risk of loss arising from conditions unknown to the parties." *Lorenzo v Noel*, 206 Mich App 682, 687; 522 NW2d 724 (1994). However, an "as is" clause does not "transfer the risk of loss where a seller makes fraudulent representations[.]" *Id*.

In the Agreements, defendants represented that as of October 2019: (1) there were no actions or proceedings threatened against them that would adversely affect the properties; (2) there were no threatened condemnation, zoning, or any other proceedings or litigation with respect to the properties; and (3) the properties were compliant with all applicable laws, ordinances, rules, regulations, codes, licenses, permits, and authorizations. The Agreements provided that these representations would survive closing, and plaintiffs would be entitled to indemnification by defendants for all claims and damages arising out of or related to a breach of the representations.

The evidence presented to the trial court demonstrated that between October 2016 and January 2020, Jet knew that the properties had permit and business license issues and were not code compliant, and that the City threatened to bring condemnation proceedings if the issues were not rectified. Jet affirmed that when he entered into the Agreements he was aware the City was still alleging at least one of the properties was noncompliant with applicable building and zoning codes but did not take any steps to resolve the issues. Although the Agreements contain an "as-is" provision, defendants represented the properties were fully compliant with local codes, regulations, and ordinances and there were no threatened condemnation proceedings, despite knowing these statements were untrue. Because defendants knew their representations constituted a breach of the contract, the "as-is" provision did not allocate the risk of loss to plaintiffs. See *Lorenzo*, 206 Mich App at 687. Viewing the evidence in the light most favorable to plaintiffs, therefore, defendants were in breach of the representations made in the Agreements concerning the state of the properties.

As stated, when a party commits a material breach and the injured party's actions indicate an intent to continue with the contract, this constitutes a waiver of the breach. See *Schnepf*, 354 Mich at 397; *Blazer Foods, Inc*, 259 Mich App at 521 n 7. Here, the evidence demonstrated that plaintiffs received notice from defendants that the properties had "parking issues" in October 2019. And plaintiffs knew the properties had zoning and building code issues as of January 2020. Despite having knowledge of these issues, plaintiffs proceeded with closing, even seeking to expedite closing before the date stated in the Agreements.

The trial court erred when it granted summary disposition because there is a genuine issue of material fact whether plaintiffs waived defendants' breach. Plaintiffs claim they only knew of the parking issues and were not aware of the full extent of the issues with the properties before closing. Defendants claim plaintiffs were aware of all issues before closing but proceeded with closing anyway. However, because waiver is a "a voluntary and intentional abandonment of a

known right," it is necessary to resolve the question of whether plaintiffs knew the extent of defendants' breach to determine whether their waiver was, in fact, mutual, voluntary and intentional. *Quality Prod*, 469 Mich at 374; see also *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 586; 939 NW2d 705 (2019) ("[W]aiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract.") (quotation marks and citation omitted). Because there is a genuine issue of material fact whether plaintiffs knew the extent of defendants' breach, the trial court improperly granted summary disposition in favor of defendants with respect to plaintiffs' breach-of-contract claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs may be taxed as neither party prevailed in full. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly